[Crim. No. 28896. Second Dist., Div. Four. June 22, 1977.]

THE PEOPLE, Plaintiff and Respondent, v.
DAVID ELLIOTT, Defendant and Appellant.

## COUNSEL

Linda C. Clark, under appointment by the Court of Appeal, for Defendant and Appellant.

Evelle J. Younger, Attorney General, Jack R. Winkler, Chief Assistant Attorney General, S. Clark Moore, Assistant Attorney General, William R. Pounders and Michael Nash, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**JEFFERSON (Bernard), J.**—Defendant appeals, after a jury trial, from a judgment of conviction of two separate robberies. Defendant was tried on the basis of an information which charged in count I that defendant had committed a robbery on December 23, 1975, with Cindy Lee Carlson being the victim and in count II with having committed a robbery on December 27, 1975, with Sandy Gail Kuhn being the victim. By an amendment to the information it was alleged that defendant had suffered two prior felony convictions.

Cynthia Carlson (Cindy in the information) testified that she was employed on December 23, 1975, at a Fotomat store located in El Monte and that, at approximately 7 p.m., defendant approached the window of the Fotomat store and demanded that she give him money as this was a robbery. Cynthia said that she put approximately $220 in a merchandise bag and handed it to defendant. Sandra Kuhn (Sandy in the information) testified that she also was employed at the same Fotomat store and that on December 27, 1975, she was robbed in approximately the same way by defendant.

Defendant was represented at the preliminary hearing by a deputy public defender. When the case was called for trial defendant made a

motion to represent himself. The court granted the motion and relieved the deputy public defender of any further responsibility.

Both of the robberies were found by the jury to be robberies of the first degree. The trial court, however, determined as a part of the judgment that the robbery charged in count I was robbery of the second degree. In sentencing defendant to state prison, count II was ordered to run consecutively with an existing sentence then being served by defendant. The sentence on count I was ordered to run concurrently with the sentence on count II. Defendant admitted the allegations of the two prior felony convictions and the trial court found the priors to be true.

Defendant urges several contentions as a basis for seeking reversal of the judgment of conviction.

### Sufficiency of the Evidence to Support a Finding of First Degree Robbery on Count II

■ Defendant contends that his conviction of first degree robbery on count II was erroneous because the evidence was insufficient to establish that at the time of the robbery he was "armed with a dangerous or deadly weapon" as required by Penal Code section 211a. This contention is without merit. The record indicates that at the time the robbery was committed as charged in count II, defendant had upon his person a hunting knife encased in a holster. No attempt was made to threaten the victim with this knife or to make use of the knife. Defendant asserts that *People* v. *Walker* (1976) 18 Cal.3d 232 [133 Cal.Rptr. 520, 555 P.2d 306] holds that first degree robbery requires the "use" of a weapon for an offense to constitute first degree robbery. This is not the holding of *Walker. Walker* deals with the question of whether a defendant must *personally use a firearm* in the commission of a charged felony if he is to be subjected to increased penalties provided by Penal Code section 12022.5.[1]

---

[1]Penal Code section 12022.5 provides: "Any person who uses a firearm in the commission or attempted commission of a robbery, assault with a deadly weapon, murder, assault with intent to commit murder, rape, burglary, or kidnapping, upon conviction of such crime, shall, in addition to the punishment prescribed for the crime of which he has been convicted, be punished by imprisonment in the state prison for a period of not less than five years. Such additional period of imprisonment shall commence upon expiration or other termination of the sentence imposed for the crime of which he is convicted and shall not run concurrently with such sentence. [¶] Upon a second conviction under like circumstances, the additional period of imprisonment shall be for a period of not less than 10 years, and upon a third conviction under like circumstances the additional period of imprisonment shall be for a period of not less

Penal Code section 211a does not require that a defendant "use" a dangerous or deadly weapon in order for the offense to constitute first degree robbery. There is a clear distinction between being "armed" with a dangerous or deadly weapon and "using" a deadly weapon. In *People v. Chambers* (1972) 7 Cal.3d 666, 672 [102 Cal.Rptr. 776, 498 P.2d 1024], the court sets forth the distinction: "We next direct our attention to that conduct which constitutes use of a firearm within the meaning of the statute. By employing the term 'uses' instead of 'while armed' the Legislature requires something more than merely being armed." (Fn. omitted.) The *Chambers* court also stated: "We note, although not pertinent to the inquiry in the instant case, that while sections 211a and 12022 are concerned with 'dangerous or deadly weapons' and 'deadly weapons' respectively, the increased penalty of section 12022.5 is invoked only when the accused 'uses a firearm.' " (*Chambers, supra,* 7 Cal.3d 666, at p. 672, fn. 5.)

As indicated in *People v. Gilliam* (1974) 41 Cal.App.3d 181, 193 [116 Cal.Rptr. 317], "the elements of *use* of a firearm during the commission of a crime, and being *armed* with a firearm are not the same. For purposes of a finding that defendant was armed with a firearm it is only necessary for the jury to believe that defendant had a firearm in his possession at the time the robbery took place because section 211a only requires that the perpetrator be 'armed.' " (Italics in original.)

### Waiver of Right to Counsel

■ Defendant asserts that he was denied the constitutional right of representation by counsel on the theory that he did not make a knowing and intelligent waiver of counsel. In *Faretta v. California* (1975) 422 U.S. 806 [45 L.Ed.2d 562, 95 S.Ct. 2525], the United States Supreme Court determined that a defendant in a state criminal trial has a federal constitutional right to represent himself. But this federal constitutional right requires that the defendant voluntarily and intelligently make the election of self-representation. The *Faretta* court expresses this constitutional right in the following language: "When an accused manages his own defense, he relinquishes, as a purely factual matter, many of the traditional benefits associated with the right to counsel. For this reason, in order to represent himself, the accused must 'knowingly and intelli-

---

than 15 years, such terms of additional imprisonment to run consecutively. [¶] Upon a fourth or subsequent conviction under like circumstances, the defendant may be imprisoned for life or a period of not less than 25 years, in the discretion of the court. [¶] This section shall apply even in those cases where the use of a weapon is an element of the offense."

gently' forgo those relinquished benefits." (*Faretta, supra,* 422 U.S. 806, at p. 835 [45 L.Ed.2d 562, at p. 581].)

But even prior to the *Faretta* decision California law had declared that "[b]efore a defendant may be permitted to waive his right to counsel, the trial court must determine that he is competent to represent himself (*People* v. *Williams,* 2 Cal.3d 894, 908 (13) [88 Cal.Rptr. 208, 471 P.2d 1008]) and has an intelligent conception of the consequences of his act (*People* v. *Robles,* 2 Cal.3d 205, 218 (9) [85 Cal.Rptr. 166, 466 P.2d 710]). As stated by this court in *Robles* at page 218 (10), 'The determination of the trial judge as to the defendant's competence to waive counsel involves an exercise of discretion by the trial judge which in the absence of an abuse of discretion will not be disturbed on appeal.' " (*People* v. *Rhinehart* (1973) 9 Cal.3d 139, 147-148 [107 Cal.Rptr. 34, 507 P.2d 642].)

In holding that the record reflected a knowing and intelligent waiver of a defendant's right to counsel under the *Faretta* case, the court in *People* v. *Harris* (1977) 65 Cal.App.3d 978, 984-986 [135 Cal.Rptr. 668] pointed out that the *Harris* defendant "was fully advised of his right to counsel, questioned by the court and warned of pitfalls of self-representation and that he would be bound by the same rules that attorneys are bound by during the conduct of the proceedings. The trial judge conveyed to defendant in no uncertain terms the foolishness of anyone (even attorneys) representing himself in a criminal matter."

The case at bench is not unlike that of *Harris* and demonstrates that the trial judge fully warned defendant that he considered it to be a mistake on his part not to accept the assistance of counsel and that defendant would be required to follow the ground rules of trial procedure and make the appropriate motions and utilize the procedural rules that an attorney would make and utilize. The trial judge also made clear to defendant that he would receive no special favors in connection with the trial of the case. The record before us establishes that the trial court, in permitting the defendant to represent himself, complied with the principle set forth in *Faretta,* as follows: "Although a defendant need not himself have the skill and experience of a lawyer in order competently and intelligently to choose self-representation, he should be made aware of the dangers and disadvantages of self-representation so that the record will establish that 'he knows what he is doing and his choice is made with eyes open.' [Citation.]" (*Faretta, supra,* 422 U.S. 806, at p. 835 [45 L.Ed.2d 562, at pp. 581-582].)

■ *Faretta* makes clear that a defendant's technical legal knowledge is an *irrelevant* consideration to the trial judge's assessment of whether the defendant has made a knowing exercise of the right to defend himself. The important considerations are that it be established that the defendant is literate and understanding and that he has voluntarily exercised the choice of representing himself. "[A]lthough he [defendant] may conduct his own defense ultimately to his own detriment, his choice must be honored out of 'that respect for the individual which is the lifeblood of the law.' [Citation.]" (*Faretta, supra,* 422 U.S. 806, at p. 834 [45 L.Ed.2d 562, at p. 581].)

### *Request by Defendant, Made After Jury Was Selected, to Withdraw His Waiver of Counsel*

■ Defendant contends that the trial court committed an abuse of discretion in denying defendant's request to withdraw his waiver of counsel. This request for withdrawal of the waiver of counsel came after a jury had been selected but before opening statements had been made.

In the era prior to *Faretta,* California law was clear that once there had been a knowing and intelligent waiver of the right to counsel, there was no absolute right for a defendant to change his mind after a trial has started and then to demand counsel.

"A defendant who, with an intelligent conception of the consequences of his act, declines the aid of counsel prior to or at the commencement of his trial, is not entitled thereafter to interrupt and delay the hearing at any stage he deems advantageous merely to interpose a demand for legal assistance." (*In re Connor* (1940) 16 Cal.2d 701, 709 [108 P.2d 10].) "Likewise, when a defendant intelligently waives his right to representation by counsel [citations], he is in no position to demand legal assistance during the trial [citation], and is not entitled to special privileges and advantages [citation]." (*People* v. *Ruiz* (1968) 263 Cal.App.2d 216, 223 [69 Cal.Rptr. 473].)

In the recent case of *People* v. *Windham* (1977) 19 Cal.3d 121 [137 Cal.Rptr. 8, 560 P.2d 1187], the California Supreme Court was faced with the issue under *Faretta* of making a determination with respect to that point during pending criminal proceedings when a defendant must assert his constitutional right of self-representation if such right is to be exercised. In *Windham,* the defendant was represented by counsel, but

prior to the commencement of the third and final day of testimony, defendant made a motion to represent himself. The *Windham* court set forth the rule that "when a defendant has elected to proceed to trial represented by counsel and the trial has commenced, it is thereafter within the sound discretion of the trial court to determine whether such a defendant may dismiss counsel and proceed *pro se.*" (*Windham, supra*, 19 Cal.3d 121, at p. 124.)

Applying the principle of trial-court discretion under the circumstances presented, the *Windham* court upheld the trial court's denial of the defendant's motion as an appropriate exercise of discretion.

In the case at bench, we have the reverse of the situation that was presented in *Windham*. The defendant in the instant case exercised his right to waive counsel and represent himself, and acted as his own counsel until the jury had been selected. After the jury had been selected but before any further trial proceedings had ensued, defendant made the request to withdraw his waiver and have counsel represent him. The trial judge denied defendant's request and the trial proceeded with defendant acting as his own attorney.

We have no decision from the California Supreme Court establishing what the *Faretta* rights of a defendant are insofar as requesting a withdrawal of a waiver of the right to counsel. The question presented is: Does a defendant who has waived his right to counsel and has elected to exercise his constitutional right to represent himself have any right, after a trial has started, to relinquish his constitutional right of self-representation and assert his constitutional right to be represented by counsel?

It would seem clear that the pre-*Faretta* principle, applied in California, that once defendant has started to represent himself, he has no absolute right to change his mind and obtain representation by counsel (see *In re Connor* and *Ruiz, supra*), is no longer tenable.

The *Windham* court was careful to point out that its holding was limited to the situation presented of a defendant seeking, after a trial has commenced, to assert his right of self-representation and to withdraw his right of counsel representation. Thus, the *Windham* court stated: "In addition, we express no opinion as to the rules applicable when a defendant initially waives counsel, proceeds to trial *pro se*, and then seeks to withdraw his waiver in order that an attorney may be appointed to represent him." (*Windham, supra*, 19 Cal.3d 121, at p. 131, fn. 7.)

We believe, however, that the *Windham* approach is the proper approach to the situation presented in the case at bench. ■ Using the *Windham* approach, it is our view that once defendant had proceeded to trial on a basis of his constitutional right of self-representation, it is thereafter within the sound discretion of the trial court to determine whether such defendant may give up his right of self-representation and have counsel appointed for him.

The *Windham* court stated that "[w]hen such a midtrial request for self-representation is presented the trial court shall inquire *sua sponte* into the specific factors underlying the request thereby ensuring a meaningful record in the event that appellate review is later required." (*Windham, supra,* 19 Cal.3d 121, at p. 128.) The *Windham* court set forth that the factors to be considered on the question of the change from counsel-representation to self-representation should be the following, among others: (1) the quality of counsel in the representation of the defendant, (2) the defendant's prior proclivity, if any, to substitute counsel, (3) the reasons for the request, (4) the length and stage of the trial proceedings, and (5) the disruption or delay which reasonably could be expected to follow the granting of such a motion.

The *Windham* court emphasized that the exercise of discretion by the trial court, in ruling on the defendant's request for a change from counsel-representation to self-representation should be predicated on a consideration of these factors with the record showing that the trial court considered such factors in ruling on the defendant's request. One of the basic reasons for imposing upon the trial court the making of a record with respect to the factors undergirding his exercise of discretion was the necessity for the trial court to make an inquiry, *sua sponte,* into the specific factors underlying the request in order to ensure a meaningful record for appellate review in the event that such review was later required.

■ In the case at bench, relevant factors must be considered by the trial court in order for it to exercise a meaningful discretion in ruling on defendant's request to change from self-representation to counsel-representation. Some of the factors to be considered are similar to the factors involved in the exercise of discretion by the trial court in ruling on a defendant's request to change from counsel-representation to self-representation. Relevant factors should include, among others, the following: (1) defendant's prior history in the substitution of counsel and in the desire to change from self-representation to counsel-representation, (2) the reasons set forth for the request, (3) the length and

stage of the trial proceedings, (4) disruption or delay which reasonably might be expected to ensue from the granting of such motion, and (5) the likelihood of defendant's effectiveness in defending against the charges if required to continue to act as his own attorney.

As in *Windham,* the trial judge must establish a record based upon the relevant factors involved and then exercise his discretion and rule on defendant's request for a change from self-representation to counsel-representation.

In the case at bench, the record indicates that after the jury had been selected, the information was amended upon the People's motion to charge defendant with two prior felony convictions. Defendant admitted the priors. Then, in a hearing at the bench, out of the presence of the jury, the prosecutor indicated that he wanted to make an offer of proof prior to his opening statement regarding the introduction of evidence that defendant had committed an uncharged offense which the prosecutor claimed would be admissible under the modus operandi theory to prove defendant's identity as the perpetrator of the charged offenses. The trial judge ruled that the offer of proof would be heard some time during the case after some evidence had been introduced. The court announced that the prosecutor would be precluded from mentioning in his opening statement any evidence of defendant's alleged commission of a similar offense. Defendant sought to raise an objection regarding the prosecutor's intent to produce witnesses to establish defendant's commission of an uncharged offense. The trial judge replied that the matter would be considered at a proper time in the future with defendant being given a full chance to set forth his position before the prosecutor could call the witnesses. The trial court then adjourned the court for the day.

At the opening of the next session, the defendant made his request to have the deputy public defender take his case over on the ground that the defendant could not successfully compete with the prosecutor. The deputy public defender who was to represent the defendant at the trial and who had been excused and released upon the granting of defendant's motion for self-representation, appeared before the trial court at the trial court's request. This deputy public defender indicated that he would be unable to begin trial of the case on that day because of other commitments. He also indicated that he desired to start the trial all over by having a mistrial declared, with the defendant's consent, so that, as defendant's attorney, he could participate in the selection of a jury. He

stated that he would be ready to begin trial under these conditions 10 days from the current date.

Defendant stated to the trial judge that his reasons for desiring the deputy public defender back in the case was because of the other witnesses that the prosecutor intended calling regarding the alleged uncharged crime. Except for that, the defendant said he was prepared to proceed with the trial. The trial judge then stated: "You ask for too much. Just a minute. You ask for too much when you ask that some attorney take over after you've already acted as your own attorney and tried a portion of the case. You ask too much. Why should they come in and take your mistakes and try to neutralize the effect of your mistakes in your defense. [¶] The problem that we're confronted with this morning is because you can't seem to make up your mind. Last week you were quite sure you could do everything."

The trial judge then reminded the defendant that he had been advised of all of the dangers of attempting to defend himself and that the defendant had previously assured the court that he understood all of what had been said to him and that he still wanted to represent himself. The prosecutor took no part in the discussion between the court, the deputy public defender and the defendant. Defendant's request was denied and the trial then proceeded with the prosecutor making an opening statement.

The record indicates that the jury had been selected at the same day's session and that the prosecution was permitted to amend the information by charging the two prior felony convictions.

It is to be noted that at the time of defendant's request to change from self-representation to counsel-representation, the trial had progressed to the point of selection of a jury and the reading of the information to the jury. There was no indication that the trial would be an unduly lengthy one. Defendant was aware of what the testimony of the two victims of the charged robberies would be from their testimony at the preliminary hearing. The prosecutor's proposal to call witnesses to establish that defendant had committed an uncharged similar offense introduced into the case a new factor which had not been considered by the defendant. When the deputy public defender, who was familiar with the case and was prepared to try it initially, indicated that he would want a 10-day continuance, no objection was stated by the prosecutor in terms of problems in the production of witnesses or with respect to any other matter that might prove prejudicial to the prosecution.

From the trial court's statements, it is obvious that the trial judge only would consider granting defendant's request if the deputy public defender was prepared to proceed at once, and with the jury that had been selected to try the case. It also is apparent that the trial court failed to consider the matter of the likelihood of defendant being effective in defending against the charges in light of the new factor which the prosecutor had mentioned—of offering evidence that defendant had committed an offense other than the two for which he was being tried.

Although the trial proceeded and the prosecutor made no effort to introduce witnesses to establish defendant's commission of a prior uncharged offense, the trial proved to some extent the existence of dangers of self-representation mentioned in *Faretta,* i.e., that defendants may generally better defend with an attorney's guidance than by their own unskilled efforts and that a defendant may conduct his defense ultimately to his own detriment. This is illustrated by evidence which defendant brought forth through his questioning of the two robbery victims, and which is relied upon by appellate counsel for defendant in alleging additional errors at the trial level.

In the cross-examination of the two robbery victims by defendant, it was elicited that, prior to the preliminary hearing, the two victims had been brought into a courtroom where court business was being conducted, and the two victims were asked to observe all persons who came into the courtroom and see if identification of the perpetrator of the two robberies could be made. While the victims were in the courtroom a group of individuals was brought into the jury box. One of these was the defendant, a Caucasian, while most of the persons brought into the jury box were of Mexican descent. There were a few black persons; but only one Caucasian other than defendant was present in the jury box. The victims identified defendant as the perpetrator.

Defendant's appellate counsel makes the argument that this courtroom identification evidence constituted an inherently unfair lineup or confrontation between defendant and the victims of the two robberies so that the later in-court identification of defendant was tainted by the inherently suggestive courtroom identification used by the police prior to the preliminary hearing.

Appellate counsel for defendant makes the contention that defendant was brought into the jury box for victim-identification purposes and without being given an opportunity to be represented by counsel on this occasion. The argument is made that in spite of defendant's ineptness

during the trial, he was seeking to establish the tainted character of the victims' identification of the defendant, in violation of his constitutional due process and equal protection rights. The Attorney General's answer to appellate defense counsel's argument is based primarily upon the rule of law that defendant's failure to object to, or make a motion to strike, the in-court identification evidence, precludes the defendant from raising the issue on appeal. In *People* v. *Najera* (1972) 8 Cal.3d 504, 515 [105 Cal.Rptr. 345, 503 P.2d 1353], the court stated: "The record indicates, however, that trial counsel failed to object to, or move to strike or suppress, the identification evidence offered at trial. It is now well established that the issue of the presence of counsel at lineup or showup confrontations cannot be raised for the first time on appeal."

The Attorney General also points out that even if the pre-preliminary courtroom identification violated defendant's right to counsel and was conducted in violation of the principles announced in *Wade* and *Gilbert*,[2] the determination would not lead to a conclusion that the defendant's trial was infected with fatal error.

"A pretrial violation of the rules announced in *Wade* and *Gilbert* does not automatically generate error in the trial unless the violation is there exploited by the prosecution. Here, in contrast to *People* v. *Fowler, supra* [1 Cal.3d 335 (82 Cal.Rptr. 363, 461 P.2d 643)], and *People* v. *Banks, supra, ante,* page 127 [2 Cal.3d 127 (84 Cal.Rptr. 367, 465 P.2d 263)], evidence of the improper pretrial confrontation was not placed before the jury by the prosecution; the matter was raised for the first time by the defense in its cross-examination of the victim." (*People* v. *Martin* (1970) 2 Cal.3d 822, 830 [87 Cal.Rptr. 709, 471 P.2d 29].)

We set forth the matter pertaining to the pre-preliminary hearing courtroom identification of defendant by the robbery victims as some indication of the trial judge's awareness of the unlikelihood that defendant would be effective in defending against the prosecution's case.

We conclude that the record in the case at bench demonstrates an abuse of discretion on the part of the trial court in refusing to grant defendant's request for a change from a constitutional right of self-representation to that of counsel-representation. The reason given by defendant for his request was a valid one. The request came at an early stage of the trial, as contrasted with the late stage in the *Windham*

---

[2]The cases of *Wade* and *Gilbert* refer to *United States* v. *Wade* (1967) 388 U.S. 218 [18 L.Ed.2d 1149, 87 S.Ct. 1926] and *Gilbert* v. *California* (1967) 388 U.S. 263 [18 L.Ed.2d 1178, 87 S.Ct. 1951].

situation. The trial was not a lengthy one. No showing was made that the 10-day delay in trial requested by the deputy public defender would cause a disruption in the calendar of the court or that it would be unfair to the prosecution or contrary to the interest of justice.

In *Windham,* since the court found no error in the ruling of the trial judge denying defendant's request for self-representation, made after the trial was well under way with defendant being represented by counsel, the court found it unnecessary to determine by what standard of reversible error the erroneous denial of a *Faretta* motion should be judged.

In the situation presented in the instant case, where defendant has exercised his constitutional right of self-representation but subsequently decides that he wishes to be represented by counsel, we believe that the issue of whether the error of the trial judge in refusing defendant's request to change his position from one of self-representation to that of counsel-representation is prejudicial error, should be governed by the *Watson-Duran* standard rather than by the *Chapman* standard. Since defendant has exercised his constitutional right of self-representation, an abuse-of-discretion error in not permitting defendant to change his mind does not appear to us to be of constitutional dimension.

In the case at bench, the evidence as to defendant's guilt was not unsubstantial. We are unable to say that it is reasonably probable that a result more favorable to defendant would have been reached in the absence of the error discussed herein. (See *People* v. *Duran* (1976) 16 Cal.3d 282, 296 [127 Cal.Rptr. 618, 545 P.2d 1322]; *People* v. *Watson* (1956) 46 Cal.2d 818, 836 [299 P.2d 243]; cf. *Chapman* v. *California* (1967) 386 U.S. 18, 24 [17 L.Ed.2d 705, 710-711, 87 S.Ct. 824, 24 A.L.R.3d 1065].)

The judgment appealed from is affirmed.

Kingsley, Acting P. J., and Dunn, J., concurred.