Filed 2/4/14  P. v. Beckham CA2/4

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| THE PEOPLE, | B241516 |
| Plaintiff and Respondent, | (Los Angeles County |
| v. | Super. Ct. No. BA386474) |
| ROBERT BECKHAM, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Drew E. Edwards, Judge.  Affirmed.

Jessica C. Butterick, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Lance E. Winters, Assistant Attorney General, Stacy Schwartz and Tannaz Kouhpainezhad, Deputy Attorneys General, for Plaintiff and Respondent.

Defendant Robert Beckham was convicted by a jury of unlawful driving or taking of a vehicle with a prior (count one, Pen. Code, § 666.5)[1] and grand theft of an automobile (count two, § 487, subd. (d)(1)). He was sentenced to a term of four years.

Defendant appeals, contending that the trial court prejudicially erred by (1) allowing the jury to learn that he had a prior conviction; (2) admitting hearsay testimony; (3) denying defendant's request to represent himself; and (4) permitting a conviction based on a violation of section 666.5, which defendant contends is a necessarily included offense of grand theft auto. Because we find no prejudicial error, we affirm the judgment in its entirety.

## STATEMENT OF FACTS AND OF THE CASE

On October 13, 2011, defendant was charged by information with unlawful driving or taking of a vehicle with a prior and grand theft auto. The case was tried to a jury in February 2012. The evidence presented at trial was as follows.

### I. Defendant's Rental From Avis Rent-A-Car

On April 12, 2011, defendant rented a red Toyota Camry (the Camry) from Avis Rent-A-Car (Avis). The vehicle was due back April 16, 2011.

As of late May 2011, defendant had not returned the Camry to Avis. Avis therefore retained Asset Recovery Incorporated (ARI), a company with whom Avis contracted to recover overdue or missing vehicles, with regard to the Camry. On about May 31, 2011, the matter was assigned to ARI field agent Richard Rangel.

As part of his efforts to recover the Camry, Rangel called the contact number on the rental contract. He called that number more times than he could record, "many, many times." If someone answered, which happened several times, Rangel testified: "I would identify myself and that I was calling in regards to the overdue rental and that his contract

---

[1]    All further undesignated statutory references are to the Penal Code.

2

had been forwarded to us because of its overdue status and that it's scheduled to be reported to the police." Typically, the person who answered the phone would immediately hang up when Rangel stated the purpose of the call. When that happened, Rangel would call back and leave a message stating his contact information, the purpose of the call, and that "in order to avoid the action of reporting it to the police, you need to either return it or call, [and] we'll pick it up[,] no questions asked." Rangel also sent 30 or more text messages to the same phone number. Each time he sent a text, he referenced the overdue rental, said the matter was scheduled to be reported to the police, and requested a call-back. Rangel never received a reply text.

When the Camry had not been recovered or returned as of June 10, 2011, an Avis employee filed a stolen vehicle report with the Los Angeles Police Department (LAPD). On June 13, 2011, Avis charged $429.83 to defendant's credit card.

## II.    Defendant's Arrest

On June 17, 2011, LAPD officers Adolfo Vazquez and Alex Abundis were patrolling near Western Avenue and 42nd Street in Los Angeles when their vehicle's digital license plate reader alerted them to a possible stolen car. The vehicle identified by the license plate reader was a red Toyota Camry, which was passing to the left of the squad car and was driven by a Black male with short braided hair. The officers made a U-turn and followed the Camry for about two miles. At some point, they lost sight of the Camry for about a minute, and then saw it parked in front of a residence at 1824 West 38th Street.

The officers called for backup and searched the Camry, from which they recovered a cell phone. They then walked southbound onto the driveway of the residence at 1824 West 38th Street, where they found a grey shirt with orange stripes and defendant's driver's license. About 20 minutes later, they apprehended defendant lying on his stomach behind a residential garage or shed, concealed by bushes. Defendant was sweating profusely and was covered with leaves and dirt. The officers arrested defendant.

3

When Officers Vazquez and Abundis returned to their station, they turned on the cell phone recovered from the Camry and looked through the stored text messages and photographs. Among other things, they saw a picture of the red Camry and messages "saying to return the vehicle to the actual rental car company in order to avoid prosecution or arrest."

Defendant did not present any witnesses at trial.

### III. Conviction, Sentence, and Appeal

On February 29, 2012, the jury convicted defendant on both counts. The court sentenced defendant to four years on count 1 (midterm of three years, plus an additional year pursuant to § 667.5, subd. (b)), and the midterm of two years on count 2. The court stayed the sentence on count 2 pursuant to section 654.

Defendant timely appealed.

## DISCUSSION

### I. Informing the Jury of Defendant's Prior Vehicle Code Conviction Was Not Reversible Error

*A.     Background*

Section 666.5 provides: "(a) Every person who, having been previously convicted of a felony violation of Section 10851 of the Vehicle Code, or felony grand theft involving an automobile in violation of subdivision (d) of Section 487 . . . , is subsequently convicted of any of these offenses shall be punished by imprisonment pursuant to subdivision (h) of Section 1170 for two, three, or four years, or a fine of ten thousand dollars ($10,000), or both the fine and the imprisonment."

Prior to trial, defense counsel agreed that section 666.5 required the prosecutor to prove a prior conviction, but urged the prosecutor should not be permitted to elicit detailed testimony regarding the nature of that conviction. The trial court agreed and said

4

that if defendant was willing to stipulate to a prior conviction, "then the jury would not hear the nature of the prior conviction."

At the conclusion of the evidence, the court asked whether defendant would stipulate "that the defendant, Robert Louis Beckham, was previously convicted of a felony violation of Vehicle Code section 10851 in Case No. BA2922953, conviction date June 21, '06, in Los Angeles Superior Court." Defense counsel responded, "Yes." The jury was never told what conduct Vehicle Code section 10851 prohibited or how defendant violated the statute.

### B.    Analysis

Defendant contends that under section 666.5, a prior conviction is a sentencing factor, not an element of the offense. Thus, he urges, the jury should not have been told of his prior offense. The Attorney General agrees that defendant's prior conviction should not have been disclosed to the jury, but contends that (1) defendant forfeited this claim of error by failing to raise it at trial, and (2) the error was harmless.

Defendant is correct that under *People v. Young* (1991) 234 Cal.App.3d 111, defendant's prior conviction should not have been disclosed to the jury. (See *id*. at p. 113 ["[T]he prior Vehicle Code conviction was not an element of any offense charged here, and article I, section 28, subdivision (f) of the California Constitution did not require that it be proven to the trier of fact. Penal Code section 1025 provides that when such a prior conviction allegation is admitted before trial the jury is not to be informed of the charge or admission."].) However, for the reasons that follow, the error does not compel reversal.

Assuming for the sake of argument that the defendant did not forfeit the error by failing to raise it at trial (*People v. Jones* (2013) 57 Cal.4th 899, 951-952 ["defendant never moved to exclude the evidence under that section and has thus forfeited the claim for appeal"]), the error was harmless. Defendant contends that his defense—that he intended to return the car and thus lacked the requisite specific intent—was "plausible" and might have been accepted by the jury had it not known of his prior conviction.

5

Defendant fails to explain, however, how knowledge of his prior conviction might have swayed the jury's evaluation of his intent, and we perceive no logical connection.

The connection between the prior conviction and the jury's evaluation of defendant's intent in the present case is particularly tenuous because all the jury was told about defendant's prior criminal history was that defendant had been "convicted of a felony violation of Vehicle Code section 10851." The jury was not told *what* conduct Vehicle Code section 10851 prohibited or *how* defendant violated the statute. It is extremely unlikely, therefore, that knowledge of defendant's prior conviction could have played a significant role in the jury's deliberations.

Finally, as the Attorney General correctly notes, the case against defendant was extremely strong. The evidence demonstrated that defendant rented from Avis on April 12, 2011, a car that was due back four days later, on April 16. More than *nine weeks* later, defendant still had not returned the car to Avis, despite "many, many" phone calls and text messages to defendant's cell phone urging him to return the car to avoid a stolen vehicle report. And on June 17, 2011, after Officers Abundis and Vazquez followed defendant in his car, he abandoned the car, removed his shirt and identification, and hid in a nearby yard. On these facts, it is not reasonably probable that a jury would have concluded that defendant's intent was other than to "deprive" Avis of possession or ownership of the vehicle.

For all of these reasons, we conclude that it is not reasonably probable that defendant would have been acquitted but for the erroneous admission of the stipulation concerning his prior conviction. Thus, the trial court's error in allowing the jury to learn of the conviction does not compel a reversal. (*People v. Watson* (1956) 46 Cal.2d 818, 836 [error harmless if not reasonably probable that result would have been different absent the error].)

6

## II.    The Trial Court Properly Admitted Richard Rangel's Testimony

Defendant contends that the trial court prejudicially erred by admitting Rangel's testimony concerning "out-of-court statements by an unknown Avis or ARI employee about appellant's address and phone number."  The challenged testimony is as follows:[2]

"Q  All right.  In addition to going to the addresses, did you ever make any other attempts to recover this vehicle?

"A (Rangel)  [W]e will try to contact by phone, if we have a phone number, you know, a contact number, and so I made calls.  On several occasions the person answered, and as soon as I stated the purpose of the call, whoever it was that answered would hang up on me.

". . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

"Q  [W]ere you calling one number or multiple phone numbers?

"A  I called one number that was — the contact number listed on the contract.

"[Defense counsel]:  Objection, Your Honor.  Hearsay.

---

[2]    At a sidebar out of the jury's presence, defense counsel objected to Rangel's testimony on the ground that it was based on hearsay:  "So he's going to be testifying to phone calls that he made to a number.  We don't have any testimony yet regarding a phone number that was given by Mr. Beckham. . . .  So there [are] multiple layers of hearsay here because he's getting information from a computer that somebody else has inputted and we don't know who that person was that inputted it or how they even came up with this information. . . .  So, therefore, as of right now, I find that any of this testimony is going to be all based upon hearsay[.]"  The prosecutor agreed that any information given to Rangel by a third person should be excluded, but argued that the phone number that Rangel called was admissible because "a phone [was] recovered in this case.  That phone is in evidence. . . .  The phone that was recovered from the defendant on the day of [his arrest] has the phone number that Mr. Rangel was calling.  It also has the text messages from Mr. Rangel saying please call me, Richard, at Mr. Rangel's number.  So I believe that the People would be able to show that the phone Mr. Beckham had was the phone that was receiving the messages from Mr. Rangel."

The court ruled that Rangel's testimony about the phone number he called was admissible:  "In light of the fact that as the People's counsel have indicated the phone was recovered [from] Mr. Beckham's car and . . . there were some messages from Mr. Rangel, I'm not going to exclude that testimony.  I don't believe that's hearsay."

"The Court: Overruled.

". . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

"Q [D]o you know what telephone number that was?

"A I remember that it ended in 1010."

After reviewing a document labeled "Rental Car Recovery Order," Rangel testified that the number at which he tried to contact defendant, which was the "contact number listed on the contract," was 323-641-1010.

Defendant contends that these statements were hearsay because they "were admitted for their truth—that the information could be used to contact appellant." Further, he says: "The out-of-court statements linking certain addresses and phone numbers to appellant provided the foundation for the rest of Rangel's testimony. Without the hearsay statements, there would be no foundation for Rangel's testimony that he called and visited appellant and advised him to return the rental car. Nor would there have been a foundation for Rangel's testimony that appellant repeatedly hung up on him. The phone calls and letters were only relevant if they reached appellant—but the only evidence establishing that appellant received them was inadmissible hearsay." (Internal record references and fn. omitted.)

We do not agree that Rangel's testimony regarding the number he called was hearsay. "'[A]n out-of-court statement is hearsay only when it is "offered to prove the truth of the matter stated." (Evid. Code, § 1200.)' (*People v. Jurado* (2006) 38 Cal.4th 72, 117.)" (*People v. Harris* (2013) 57 Cal.4th 804, 843.) In the present case, the prosecution offered Rangel's testimony to prove that he repeatedly made calls and sent texts to a particular phone number, *not* that the phone number was defendant's. The prosecution relied on other evidence to link Rangel's phone calls to defendant—namely, the testimony of the arresting officers, who said that they recovered from the Camry a phone on which they discovered Rangel's text messages. Because Rangel's testimony was offered for a nonhearsay purpose, the trial court properly admitted it.

**III. The Trial Court Did Not Abuse Its Discretion in Denying Defendant's Motion to Represent Himself**

Defendant contends that the trial court erred in denying his request for self-representation under *Faretta v. California* (1975) 422 U.S. 806 (*Faretta*). His claim is without merit.

"A criminal defendant has a constitutional right to counsel at all critical stages of a criminal prosecution, including sentencing. (*Mempa v. Rhay* (1967) 389 U.S. 128, 134-137; *People v. Dunkle* [(2005)] 36 Cal.4th [861,] 930.) The right to counsel may be waived by a criminal defendant who elects to represent himself at trial. (*Faretta v. California*, *supra*, 422 U.S. at pp. 807, 834-835.) The right of self-representation is absolute, but only if a request to do so is knowingly and voluntarily made and if asserted a reasonable time before trial begins. Otherwise, requests for self-representation are addressed to the trial court's sound discretion. (*People v. Windham* (1977) 19 Cal.3d 121, 127-129 [(*Windham*)].)" (*People v. Doolin* (2009) 45 Cal.4th 390, 453.)

In the present case, defendant sought leave to represent himself the same day that jury voir dire was set to begin. Defendant did not articulate any reason for his request, and he sought to continue the trial "a couple of weeks" in order to prepare. The court denied the request, noting that "the matter is here for trial. The court is relying on the case of People v. Jackson 45 Cal.4th 662. Mr. Beckham does have a right to go pro per if that request is made in a timely manner before trial. I'll note for the record that we're here for trial. The jury is out in the hallway. We're ready to start the trial in this case. The court is going to rule at this time that Mr. Beckham's request to go pro per has not been made in a timely [manner]. Mr. Beckham has been represented by counsel for several months. He's only indicated he wants to [go] pro per the morning of trial. That request pursuant to People v. Jackson is not timely and will be denied at this time."

When a *Faretta* motion is made on the day set for trial, the court "[has] discretion to decide to grant or deny it. [Citation.] Such discretion, it would seem in light of *People v. Lynch* [(2010)] 50 Cal.4th [693,] 722-723, should seldom be exercised in favor of granting the motion . . . . The trial court need not . . . elaborate[] on its ruling that

9

defendant's motion could not be granted under such inopportune circumstances.  A trial court abuses its discretion when its ruling falls outside the bounds of reason (*People v. Benavides* (2005) 35 Cal.4th 69, 88) . . . ."  (*People v. Powell* (2011) 194 Cal.App.4th 1268, 1278.)

In the present case, defendant did not ask to represent himself until the morning trial was set to begin, and he accompanied his self-representation request with a request to continue the trial "a couple of weeks" in order to prepare.  The trial judge was rightly concerned that granting defendant's request would disrupt and delay the trial, which had already been continued many times.  Under these circumstances, "[t]he court could reasonably believe that a continuance, which defendant would have needed insofar as he told the court and prosecutor that he was not ready to proceed to trial, would have impaired the orderly administration of justice."  (*People v. Powell*, *supra*, 194 Cal.App.4th at p. 1278.)  The court thus acted well within its discretion in denying defendant's request for self-representation.  (See, e.g., *People v. Frierson* (1991) 53 Cal.3d 730, 742 [trial court did not abuse its discretion in denying motion for self-representation made "on the eve of trial"]; *People v. Moore* (1988) 47 Cal.3d 63, 79 [no abuse of discretion in denying motion for self-representation made one court day before day trial was to begin:  "*Windham*[, *supra*,] . . . did not purport to allow a defendant to unnecessarily delay trial under the pretense of a *Faretta* motion.  Indeed, we specifically stated in *Windham*, that 'a defendant should not be permitted to wait until the day preceding trial before he moves to represent himself and requests a continuance in order to prepare for trial without some showing of reasonable cause for the lateness of the request."]; *People v. Powell*, *supra*, 194 Cal.App.4th at p. 1278 [no abuse of discretion where trial court denied *Faretta* motion made "on the day set for trial"].)

Defendant argues that, even if his *Faretta* motion was untimely, the trial court abused its discretion by denying it without considering the factors articulated in *Windham*, *supra*, 19 Cal.3d at page 128.  We do not agree.  Defendant cites no authority for the proposition that a court must review all of the *Windham* factors on the record and, indeed, our Supreme Court has expressly held to the contrary in the context of the

10

revocation of a *Faretta* waiver. (*People v. Lawrence* (2009) 46 Cal.4th 186, 196 ["[W]e do not agree with [defendant's] premises that the trial court must review on the record each factor mentioned in [*People v. Elliott* (1977) 70 Cal.App.3d 984],[3] or that any one factor is necessarily determinative. The standard is whether the court's decision was an abuse of its discretion under the totality of the circumstances [citation], not whether the court correctly listed factors or whether any one factor should have been weighed more heavily in the balance."].) Further, defendant nowhere suggests how consideration of these factors would have made a difference. Indeed, in requesting to represent himself, defendant did not articulate *any* reason for the request, and he suggests none on appeal.

For all of these reasons, therefore, the trial court's denial of defendant's *Faretta* request was well within its discretion.

## IV. A Violation of Section 666.5 Is Not a Necessarily Included Offense of Grand Theft Auto

Defendant contends that count one is a necessarily included offense of count two. He thus urges that because California law prohibits multiple convictions based on necessarily included offenses, his conviction on count one must be reversed. For the reasons that follow, defendant errs.

In general, a person may be *convicted* of (although not *punished* for)[4] more than one crime arising out of the same act or course of conduct. "'In California, a single act or course of conduct by a defendant can lead to convictions "of *any number* of the offenses

---

**3** In *People v. Elliott*, *supra*, 70 Cal.App.3d 984, the court held that a midtrial request to revoke in propria persona status was addressed to the sound discretion of the trial court, and it "[a]dapt[ed] the nonexclusive list of factors to consider mentioned in *Windham*." (*People v. Lawrence*, *supra*, 46 Cal.4th at p. 192.)

**4** Section 654 prohibits multiple punishment for the same "act or omission." Therefore, when a defendant is convicted of multiple charges arising out of the same act or omission, the trial court must stay execution of sentence on the convictions for which multiple punishment is prohibited. (*People v. Reed* (2006) 38 Cal.4th 1224, 1227.)

11

charged." (§ 954, italics added; *People v. Ortega* (1998) 19 Cal.4th 686, 692.)' (*People v. Montoya* (2004) 33 Cal.4th 1031, 1034.)" (*People v. Reed*, *supra*, 38 Cal.4th at pp. 1226-1227.) A judicially created exception to the rule applies, however, in the case of "necessarily included offenses." As our Supreme Court has explained, "A judicially created exception to the general rule permitting multiple conviction 'prohibits multiple convictions based on necessarily included offenses.' (*People v. Montoya*, *supra*, 33 Cal.4th at p. 1034.) '[I]f a crime cannot be committed without also necessarily committing a lesser offense, the latter is a lesser included offense within the former.' (*People v. Lopez* (1998) 19 Cal.4th 282, 288.)" (*People v. Reed*, *supra*, 38 Cal.4th at p. 1227.)

Applying the standard to the present case, the question is whether an individual who commits the crime of grand theft auto in violation of section 487, subdivision (d) necessarily violates section 666.5. The answer is no. The crime of grand theft auto is complete when an automobile is taken with the specific intent to permanently deprive the owner of the property. (§§ 484, 487; *People v. Davis* (1998) 19 Cal.4th 301, 305.) There is no requirement that the perpetrator have a criminal record. In contrast, section 666.5 does not apply unless the defendant has been previously convicted of an enumerated felony. As a result, one can commit the offense of grand theft auto without violating section 666.5.

Defendant attempts to avoid this conclusion by asserting that the prior conviction requirement in section 666.5 is a sentencing factor, not an element of the offense. Thus, he contends, we must ignore the prior conviction in evaluating the statutory elements of section 666.5. His argument misses the mark.

The case upon which defendant relies, *People v. Young*, *supra*, 234 Cal.App.3d 111, is inapposite. As we discussed, *Young* examined whether a prior conviction was an element of section 666.5 for the purpose of determining if the existence of the prior had to be proven to the trier of fact. The court did not consider whether a prior conviction is a statutory element of section 666.5 when deciding if multiple convictions are proper under section 654.

In ascertaining whether a prior conviction is a statutory element of section 666.5, we find our Supreme Court's opinion in *People v. Sanders* (2012) 55 Cal.4th 731 instructive. There, the court considered whether former section 12021.1, which prohibits possession of a firearm after conviction of a specified violent offense, is a necessarily included offense of possession of a firearm by a convicted felon, former section 12021, subdivision (a)(1). (*Id.* at p. 735.) In evaluating the statutory elements of the two offenses, the court considered the prior convictions enumerated in each statute and found that neither offense is necessarily included in the other. (*Id.* at pp. 736-738.)

Similarly, in deciding whether section 666.5 is a necessarily included offense of grand theft auto, we conclude the requirement of a prior conviction in section 666.5 is a statutory element. To do otherwise would violate two principles of statutory construction. First, if we adopted defendant's view, section 666.5 would be rendered superfluous in any case where a person was charged with an offense enumerated in that statute. Without the additional element of the prior conviction, the criminal conduct prohibited by the two statutes would be identical. This would render section 666.5 wholly unnecessary. Such an interpretation is to be avoided. (See *Van Horn v. Watson* (2008) 45 Cal.4th 322, 333 [court rejected statutory interpretation that rendered other statutes unnecessary surplusage].) Second, as the Attorney General notes, section 666.5 carries a greater sentence than section 487, subdivision (d).[5] If section 666.5 is a necessarily included offense of grand theft auto, we would be required to vacate the conviction for the offense that carried the greater punishment. This would eviscerate the Legislature's clear intent to punish those with prior felony convictions more severely. Such an interpretation would ignore "our fundamental task, [which] is to determine the Legislature's intent so as to effectuate the law's purpose." (*People v. Murphy* (2001) 25 Cal.4th 136, 142; see also *People v. Reed*, *supra*, 38 Cal.4th at p. 1230 [rejecting as

---

[5]     The sentence for grand theft auto is 16 months, two years, or three years. (§§ 489, subd. (a), 18, subd. (a).)

13

"absurd" the notion that more serious crime could be deemed necessarily included offense of less serious crime].)

**DISPOSITION**

The judgment is affirmed.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

EDMON, J.[*]

We concur:

EPSTEIN, P. J.

MANELLA, J.

---

[*]     Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.