[Crim. No. 2464. Fifth Dist. Nov. 3, 1976.]

THE PEOPLE, Plaintiff and Respondent, v.
JOSEPH MOYA GOMEZ, Defendant and Appellant.

**COUNSEL**

Deborah A. King, under appointment by the Court of Appeal, for Defendant and Appellant.

Evelle J. Younger, Attorney General, Jack R. Winkler, Chief Assistant Attorney General, Arnold O. Overoye, Assistant Attorney General, and Joel Carey, Deputy Attorney General, for Plaintiff and Respondent.

**OPINION**

**BROWN (G. A.), P. J.**—The appellant, Joseph Moya Gomez, was convicted of robbery in the second degree (Pen. Code, §§ 211, 211a) and was sentenced to state prison. He appeals. He raises several points regarding the alleged invalidity of his arrest and the search of the premises where he was arrested, the failure of the court to suppress an in-court identification of appellant by the victim, and misconduct of the prosecutor.

Resolving conflicts in the evidence in favor of the respondent, the facts in sum show that at about 5:30 p.m. on May 10, 1975, a man, later identified as appellant, robbed Gwen Scribner, who was working alone as a clerk of the Kwik-Way Market in Avenal. The sum taken was $76.62. At the time he approached Mrs. Scribner and demanded, "Let me have your money," he appeared to her to have a small gun in his hand with only the barrel showing. After he was arrested and was enroute to jail, he stated to the officer, "The gun wasn't really—wasn't real anyway, and I threw it away before I went back to the house."

As appellant left the store with the money in a brown paper bag, the victim signaled Gene Sides, who was outside using the gasoline pumps, that she had just been robbed by the man who had exited the store minutes before.

Sides noted the license number of the vehicle in which appellant departed and followed the vehicle until it finally stopped at the Jalisco Bar in Avenal, where appellant exited the automobile and entered the building. The license number was given to the sheriff's office, which ascertained that the registered owner of the vehicle was one Ramon Gomez. Deputy Surber was sent to the scene. Upon entering the bar he learned from Ramon Gomez, who, in addition to being owner of the automobile, was the owner of the Jalisco Bar, that the appellant is his stepbrother and that he had been using the car during the day, returned it to the bar at about 6 p.m., gave the keys to Ramon Gomez, and exited the rear of the bar.

Ramon also told the officer that appellant was living with him at 716 Fremont Street and that the home was also occupied by Ramon's daughter, Sophia Yralas and her husband, Victor Yralas. Ramon volunteered to take Deputy Surber to the 716 Fremont Street address.

Upon arrival at that address, Deputy Surber, who was in uniform, knocked on the front door. The knock was answered by Victor Yralas. The officer inquired if the appellant was present. The officer testified at one point that he advised Yralas that appellant was suspected of robbery. Later in his testimony he was not sure whether he had made this statement. In any event, Yralas promptly and willingly opened the door and motioned the deputy to follow him toward the rear of the residence, where Yralas pointed out appellant through an open doorway where appellant was asleep on the bed. There was no door at the entrance to the bedroom where he was asleep.

The deputy arrested appellant. A search of his person yielded $65.10 in cash.[1]

## SEARCH AND SEIZURE ISSUES

Appellant argues that his arrest was invalid because it was made without a warrant and that the officer did not comply with the knock and notice requirements of Penal Code section 844, either at the outer door to the house or at the entrance to the bedroom. He concludes that the money seized from his person must be suppressed as evidence.

First, it is noted that *People* v. *Ramey* (1976) 16 Cal.3d 263 [127 Cal.Rptr. 629, 545 P.2d 1333], prohibiting arrest in a home without a warrant absent exigent circumstances, is inapplicable since it was expressly made prospective in its operation. (See 16 Cal.3d at p. 276, fn. 7.) Thus, the People need only show that the officer had probable cause to enter the home to make the arrest and need not demonstrate exigent circumstances. (Pen. Code, § 836; *People* v. *Ramey, supra,* 16 Cal.3d at p. 270.)

■ Probable cause to arrest without a warrant exists if the facts and circumstances known to the arresting officer would cause a man of ordinary care and prudence to believe and to conscientiously entertain an honest and strong suspicion that an offense has been committed and that the accused is guilty thereof. (*People* v. *Fritz* (1967) 253 Cal.App.2d 7 [61 Cal.Rptr. 247] (cert. den., 392 U.S. 910 [20 L.Ed.2d 1367, 88 S.Ct. 2066]).)

Applying this test to the facts heretofore iterated, it is manifest that the officer had probable cause to arrest the appellant without a warrant. He had been described by the victim, the license number of the vehicle in which he escaped had been obtained, and he had been followed to the Jalisco Bar. He was identified by Ramon Gomez, the owner of the vehicle, as having been the occupant of the vehicle which appellant had left at the bar shortly after the robbery. With the assistance of Ramon Gomez, appellant's stepbrother, he was traced to the residence. The arrest was part of a continuing investigation which had begun one and one-half to two hours earlier. The police had been told that the robber

---

[1]A hypodermic syringe was also seized from the person of appellant at the time of the arrest; however, as later will appear, the trial court on pretrial motion excluded introduction of testimony relating to the syringe.

was armed, and the officers did not know whether the suspect was actually living at the location where they arrested him or whether he was there only temporarily. Thus, the officers were in hot pursuit. (*People* v. *Hammond* (1960) 54 Cal.2d 846, 854 [9 Cal.Rptr. 233, 357 P.2d 289]; *People* v. *Bryant* (1970) 5 Cal.App.3d 563, 569 [85 Cal.Rptr. 388].)

■ The principal purpose of Penal Code section 844[2] is to avoid violent confrontations which may result in injury to occupants and to the entering officer. (*Duke* v. *Superior Court* (1969) 1 Cal.3d 314, 321 [82 Cal.Rptr. 348, 461 P.2d 628].) However, the section expressly pertains to breaking and entering and has no application where consent to enter has been expressly obtained (*Mann* v. *Superior Court* (1970) 3 Cal.3d 1, 9 [88 Cal.Rptr. 380, 472 P.2d 468] (cert. den., 400 U.S. 1023 [27 L.Ed.2d 635, 91 S.Ct. 588])) or where permission to enter is by actions which clearly and unequivocally indicate such entry is invited. (*People* v. *Harrington* (1970) 2 Cal.3d 991, 995 [88 Cal.Rptr. 161, 471 P.2d 961] (cert. den., 402 U.S. 923 [28 L.Ed.2d 662, 91 S.Ct. 1384]); *Nerell* v. *Superior Court* (1971) 20 Cal.App.3d 593, 599 [97 Cal.Rptr. 702] (overruled on other grounds in *People* v. *Medina* (1972) 6 Cal.3d 484, 489 [99 Cal.Rptr. 630, 492 P.2d 686]).)

In the case at bench such consent to enter the premises was clearly and voluntarily given, not only at the exterior door of the premises but into the interior area where appellant was sleeping. As we have pointed out, that room had no door.

In *Young* v. *Superior Court* (1976) 57 Cal.App.3d 883 [129 Cal.Rptr. 422], this court held that the policies underlying section 844 applied to the entry into an interior bathroom to which the door was closed and that a joint occupant of the household could not give consent to enter such an area when it was occupied and the door was closed. The rationale of the decision was that a joint occupant could only give consent to enter into those areas over which he exercised exclusive or joint control and that a room occupied with the door closed was under the temporary and exclusive control of the occupant. (See *Young* v. *Superior Court, supra,* 57 Cal.App.3d at p. 887.) We said: "An occupant of a *closed* bathroom, the same as an occupant of a *closed* bedroom, is entitled to an expectation of

[2]Penal Code section 844 provides: "To make an arrest, a private person, if the offense be a felony, and in all cases a peace officer, may break open the door or window of the house in which the person to be arrested is, or in which they have reasonable grounds for believing him to be, after having demanded admittance and explained the purpose for which admittance is desired."

privacy far greater than those persons in the common areas of a house, such as the living room and kitchen." (Italics added.)

It is also noted that the other cases applying either Penal Code section 1531 or its counterpart, Penal Code section 844, to interior entry involved *closed* doors. (See *People* v. *Glasspoole* (1975) 48 Cal.App.3d 668, 676-677 [121 Cal.Rptr. 736]; *People* v. *Webb* (1973) 36 Cal.App.3d 460, 464-466 [111 Cal.Rptr. 524]; cf. *People* v. *Livermore* (1973) 30 Cal.App.3d 1073 [106 Cal.Rptr. 822].)

The facts in the case at bench argue against imposing the knock and notice requirements herein. There was no door to the area in which appellant was physically located. It was, for all that appears, a common area of the house as to which the joint occupants had full ingress and egress. Appellant could have had no expectation of privacy as to the other joint occupants while physically occupying such an area as he would have had if he had been in a closed bedroom or bathroom. Accordingly, we conclude that the joint occupant, Yralas, could give consent to enter therein (see *People* v. *Meneley* (1972) 29 Cal.App.3d 41, 56 [105 Cal.Rptr. 432]), thus obviating the necessity of complying with Penal Code section 844. (*Mann* v. *Superior Court, supra,* 3 Cal.3d 1, 9.)

## IN-COURT IDENTIFICATION

By pretrial motion appellant sought to suppress the proposed in-court identification by the victim, arguing that the identification was unduly tainted by an excessively suggestive pretrial identification. The motion was denied. ■ We have concluded that there is substantial evidence in the record to support the trial court's implied finding that the pretrial single-person showup was not excessively suggestive and that the in-court identification was independent of the pretrial identification. (*People* v. *Superior Court (Keithley)* (1975) 13 Cal.3d 406, 410 [118 Cal.Rptr. 617, 530 P.2d 585].)

The facts are these. Immediately upon his arrest appellant was handcuffed and was taken outside the Fremont Street address to the patrol car to await transportation to the jail. The victim, Mrs. Scribner, was driven to the scene of the arrest by a deputy sheriff. As the patrol car approached, Mrs. Scribner immediately identified appellant as the robber. Appellant was standing outside the patrol car, handcuffed, with two deputies standing near him. Mrs. Scribner testified that she made her identification as she approached and prior to the deputy's saying

anything to her with regard to making such an identification, except that when he picked her up he said there was a suspect they would like her to look at. Mrs. Scribner testified also that she did not see the handcuffs as his hands were hidden behind the hood of a parked car and she was not aware of anyone else standing by appellant because she so quickly identified him as the man who had perpetrated the robbery. She emphasized that there was no doubt in her mind. The identification was made approximately one and one-half to two hours after the robbery. She also testified that during the robbery the appellant was standing only one and one-half to two feet away from her and was not wearing anything over his face. She said she kept reminding herself to study the face of the robber because she knew she would be called upon later to identify him. Nothing in the record suggests that the victim's description of the robber given to the police shortly after the incident varied from the appearance of appellant.

■ We first point out that this court applies the substantial evidence test in reviewing the trial court's determination, with a resultant resolution of conflicting factual versions in favor of the finding of the trial court. (*People* v. *Greene* (1973) 34 Cal.App.3d 622, 646 [110 Cal.Rptr. 160].)

■ A single person showup is not inherently unfair. (*Stovall* v. *Denno* (1967) 388 U.S. 293, 302 [18 L.Ed.2d 1199, 1206, 87 S.Ct. 1967]; *People* v. *Bisogni* (1971) 4 Cal.3d 582, 587 [94 Cal.Rptr. 164, 483 P.2d 780]; *People* v. *Bauer* (1969) 1 Cal.3d 368, 374 [82 Cal.Rptr. 357, 461 P.2d 637, 37 A.L.R.3d 1398] (cert. den., 400 U.S. 927 [27 L.Ed.2d 187, 91 S.Ct. 158]); *People* v. *Burns* (1969) 270 Cal.App.2d 238, 246 [75 Cal.Rptr. 688].) Rather, the question is whether " 'the confrontation conducted . . . was so unnecessarily suggestive and conducive to irreparable mistaken identification that [the defendant] was denied due process of law.' " (*Neil* v. *Biggers* (1972) 409 U.S. 188, 196 [34 L.Ed.2d 401, 409, 93 S.Ct. 375], quoting from *Stovall* v. *Denno, supra,* 388 U.S. at pp. 301-302 [18 L.Ed.2d at pp. 1205-1207].) Or stated another way, the identification can be set aside only if the "identification procedure was so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification." (*Simmons* v. *United States* (1968) 390 U.S. 377, 384 [19 L.Ed.2d 1247, 1253, 88 S.Ct. 967]; *People* v. *Rist* (1976) 16 Cal.3d 211, 217 [127 Cal.Rptr. 457, 545 P.2d 833].) This determination is to be made upon "the totality of the circumstances." (*Neil* v. *Biggers, supra,* 409 U.S. at p. 196 [34 L.Ed.2d at p. 409]; *Stovall* v. *Denno, supra,* 388 U.S. at p. 302 [18 L.Ed.2d at p. 1206]; *People* v. *Bisogni, supra,* 4 Cal.3d at p. 587;

*People* v. *Bauer, supra,* 1 Cal.3d at p. 374; *People* v. *Anthony* (1970) 7 Cal.App.3d 751, 764-765 [86 Cal.Rptr. 767].) And it cannot be denied that " 'Prompt identification of a suspect who has been apprehended close to the time and place of the offense "aids in quickly exonerating the innocent and discovering the guilty." [Citation.]' " (*People* v. *Burns, supra,* 270 Cal.App.2d at p. 246, quoting from *People* v. *Irvin* (1968) 264 Cal.App.2d 747, 759 [70 Cal.Rptr. 892].)

In *Neil* v. *Biggers, supra,* 409 U.S. at page 199 [34 L.Ed.2d at page 411], the Supreme Court of the United States set forth a series of factors to be considered in determining whether a confrontation procedure was so suggestive as to lead to the likelihood of misidentification. These factors are: "the opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of the witness' prior description of the criminal, the level of certainty demonstrated by the witness at the confrontation, and the length of time between the crime and the confrontation."

■ Applying the foregoing standards to the facts heretofore set out, it is patent that the trial court's implied finding that the single-person showup under the circumstances was permissible, and, if it was suggestive, the in-court identification was independent of that identification procedure. Accordingly, appellant's due process rights were not violated.

There was no error in denying the motion.

### MISCONDUCT OF THE PROSECUTOR

■ At a pretrial hearing held on the morning of the trial the court, on appellant's motion and in the exercise of its discretion under Evidence Code section 352, ordered the prosecutor not to refer to the seizure of a hypodermic syringe from the person of the appellant at the time of his arrest.

During the morning session the prosecutor called as his fourth witness the deputy sheriff who assisted in making the arrest. During the direct examination the following colloquy occurred: "Q. Now, was there any property taken from the defendant at the time he was arrested? A. There was some money taken from him and a hypodermic needle part of the syringe—" Appellant's counsel immediately objected to the testimony of

the deputy and both counsel approached the bench. No other mention was made during the trial of this piece of evidence, and no admonition or other instruction was given the jury concerning it. Appellant's counsel requested that the matter be totally dropped and urged the court at the close of the morning session and out of the hearing of the jury that no admonitory instruction be given.

In chambers the prosecutor apologized for the incident and explained that after the court's ruling in chambers he had had no chance to talk with the witness prior to his testifying.

■ Misconduct of the prosecutor implies a dishonest act or an attempt by an attorney to persuade the court or jury by the use of deceptive or reprehensible methods. (*People* v. *Beivelman* (1968) 70 Cal.2d 60, 75 [73 Cal.Rptr. 521, 447 P.2d 913] (cert. den., 406 U.S. 971).) "Whether the prosecution has committed misconduct depends upon the particular circumstances of each case and bad faith must be shown to establish the existence of misconduct . . . ." (*People* v. *Romo* (1975) 47 Cal.App.3d 976, 987 [121 Cal.Rptr. 684].)

Bad faith may be manifested by the prosecutor's intentionally asking questions of witnesses, the answers to which he knows are inadmissible because of their prejudice to the accused (*People* v. *Romo, supra,* 47 Cal.App.3d 976, 987), or by asking questions of witnesses knowing those questions to be inadmissible and improper and not expecting to receive answers to them. (*People* v. *Stokley* (1968) 266 Cal.App.2d 930, 935 [72 Cal.Rptr. 513] (cert. den., 395 U.S. 914 [23 L.Ed.2d 227, 89 S.Ct. 1761]).) In *People* v. *Glass* (1975) 44 Cal.App.3d 772, 781-782 [118 Cal.Rptr. 797], misconduct of the prosecutor was found in his failure to follow the judge's specific instructions to him to advise his witness not to mention certain prejudicial information during the witness' testimony.

■ It is apparent to us that the inadvertent conduct by the prosecutor in this case does not fall within the definition of misconduct of the prosecutor as defined in the cited precedential authority.

Moreover, the case was not a closely balanced one on the issue of guilt and counsel made a conscious tactical decision at trial to not seek an admonitory instruction from the court. As was said in the recent Supreme Court case of *People* v. *McDaniel* (1976) 16 Cal.3d 156, 176-177 [127 Cal.Rptr. 467, 545 P.2d 843]: "Even assuming prosecutorial miscon-

duct [where timely objection and/or request for admonition were not made at trial] defendant cannot object unless the misconduct can be said to have contributed materially to the verdict in a closely balanced case or is of such a nature that it could not have been cured by a proper and timely admonition. (See *People* v. *Perry* (1972) 7 Cal.3d 756, 790 . . . .)"

It is not reasonably probable that a result more favorable to the appellant would have occurred absent the question asked and the answer that was given. (*People* v. *Beivelman, supra,* 70 Cal.2d at p. 75; *People* v. *Watson* (1956) 46 Cal.2d 818, 835-836 [299 P.2d 243].)

The judgment is affirmed.

Franson, J., and Thompson, J.,* concurred.

---

*Retired judge of the superior court sitting under assignment by the Chairman of the Judicial Council.