[Crim. No. 35527. Second Dist., Div. One. Aug. 21, 1980.]

THE PEOPLE, Plaintiff and Respondent, v.
BOBBIE LORENO SMITH, Defendant and Appellant.

**COUNSEL**

Quin Denvir, State Public Defender, under appointment by the Court of Appeal, and Richard A. Curtis, Deputy State Public Defender, for Defendant and Appellant.

George Deukmejian, Attorney General, Robert H. Philibosian, Chief Assistant Attorney General, S. Clark Moore, Assistant Attorney General, Norman H. Sokolow and Howard J. Schwab, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**TITLE, J.**\*—Defendant was charged in a two-count information with grand theft (Pen. Code, § 487; count 1) and burglary (Pen. Code, § 459; count 2). A jury having been waived, defendant was found guilty in a court trial of grand theft, and was found not guilty of burglary. The court suspended proceedings, placed defendant on informal probation for a period of three years, conditioned upon his serving one year in the county jail. Defendant appeals from the judgment.

### FACTUAL BACKGROUND

Joseph Alter and his wife, Dana, operated a cleaning shop in the City of Los Angeles for a number of years. Defendant had been a customer for five or six months prior to January 18, 1979, and would occasionally bring in garments to clean. Mr. Alter had seen defendant between five and ten times prior to that date. They engaged in conversations during some of these visits, and Mr. Alter had a good opportunity to look at defendant.

On January 17, 1979, defendant came into the Alter shop several times asking to borrow money, and on one of these occasions Mr. Alter gave him $3 from his wife's purse which was kept under the counter. Defendant was standing at the counter when Mr. Alter removed the $3 from the purse and gave it to defendant. On January 18, 1979, between 10 a.m. and 11 a.m., while Mr. Alter was gone, Mrs. Alter was alone in the shop. Defendant allegedly came in and went behind the counter where the clothing was kept. He demanded a woman's dress which he claimed to have left there, and frightened Mrs. Alter. When she attempted to talk to him he would hold his hands up hiding his face, but she looked at him face to face and was able to see his face. She noted he had a bad eye. He rummaged among the clothes, and Mrs. Alter told him that she didn't think she could find his stuff, and suggested

---

\*Assigned by the Chairperson of the Judicial Council.

that he return when Mr. Alter was in the shop. He had been behind the counter, underneath which Mrs. Alter kept her purse. She then noticed a bulge underneath his jacket in the area of his stomach, and he left the shop.

At that time Mr. Alter was returning to the shop, and when he was about 11 or 12 yards away he saw defendant step out of the shop. He also noticed that defendant had something underneath his jacket, which was bulging in the area of the belt-buckle. Mr. Alter came face-to-face with defendant, who was walking in the direction of the Plantation Motel, where Mr. Alter knew that defendant lived. Mr. Alter then entered the shop, and approximately forty-five minutes to one hour later, they discovered that his wife's purse, which had been underneath the counter, was missing. Mrs. Alter thereupon went to the Plantation Motel, and inquired of the manager if there was a man there with a bad eye. Mrs. Alter told the manager that the man had taken her purse, and the manager referred to defendant as Bobbie Smith and told Mrs. Alter that defendant was desperate to get some money because he was behind in the rent. Neither Mr. nor Mrs. Alter had given defendant permission to take the purse or anything else out of the shop.

Some time later Mr. Alter was shown some photographs by a police officer, and picked out a photograph of defendant. He did not look at any of the other photographs of other individuals because he immediately recognized defendant as the suspect. Mrs. Alter was also shown a group of photographs of various individuals by the officer, and instantly identified defendant in one of the photographs as the one who took her purse. She recognized him because of his bad eye, and further identified him in court because he had the face of the person who came into her store.

Mrs. Bradford was a maid at the Plantation Motel, and prior to January 18 had been instructed by the management to remove defendant's belongings from his room, and to assist in changing the lock on his door. The lock was changed on January 18, before 10 a.m., and on that date, somewhere around 11 a.m. to 11:30 a.m., Mrs. Bradford observed the defendant at the Plantation Motel. The photographs were also shown to Mrs. Bradford by the officer, and she immediately identified defendant's photograph.

During the course of the trial defendant offered an alibi defense, and called witnesses who testified that he was elsewhere at the time of the alleged theft.

Defendant was originally represented in his case by a deputy public defender, and when the case was called for trial on April 17, 1979, the deputy public defender indicated she was engaged in trial elsewhere but would be prepared to proceed either on the following day or the day after. Defendant indicated he was unwilling to wait, and thereupon moved to represent himself in pro. per. The trial judge engaged in a lengthy colloquy with defendant, during which she asked him a number of incisive questions concerning his ability to represent himself and his understanding of the consequences, including the dangers and pitfalls of self-representation. During this colloquy defendant basically indicated that he was not new to the matter of court proceedings, having sat through perhaps 10 court proceedings, and having read law books as well. The court went into considerable detail in inquiring of defendant as to whether he understood what he would be required to do in trying his own case. Having been satisfied that defendant was knowingly and intelligently waiving his right to counsel and was adamant in his insistence that he represent himself, the court relieved the public defender and granted defendant the right to proceed without counsel. Defendant was granted a short continuance after the court ordered that he could represent himself.

The trial in fact commenced some six days later after defendant waived a jury. After the direct examination of the prosecution's first witness was completed, and in the middle of defendant's cross-examination of that witness, defendant changed his mind concerning his pro. per. status and requested the court to appoint an attorney for him other than from the public defender's office. The court conducted a hearing in connection with defendant's request, during which it was indicated by defendant that there was a conflict of interest between the public defender's office and himself because of his dissatisfaction with the public defender's services in a case some 16 years earlier, and further because the deputy public defender in the instant case had gone together with the deputy district attorney to see a witness concerning the whereabouts of Mrs. Alter's purse. The trial court denied defendant's request for such counsel, and defendant proceeded with the completion of the cross-examination of the prosecution witness.

Three additional prosecution witnesses were called and testified, and when the prosecution rested on the second day of trial, defendant again requested the court to appoint counsel other than a member of the public defender's office, and further indicated to the court that if the court did not grant that request, he would be willing to accept the deputy

public defender who had represented him in the proceedings. The court again held a hearing, during which hearing the deputy public defender was summoned and appeared. The trial judge found that there was no conflict of interest between defendant and the public defender, and the public defender indicated that if she were reappointed, she would urge a mistrial; and that if the mistrial was not granted, it would be necessary for her to request a reporter's transcript so that she could recall and further cross-examine all of the prosecution's four witnesses. She indicated that a delay of at least two weeks would be required regardless of whether or not the motion for mistrial was granted. At the conclusion of the hearing the trial court denied defendant's request for counsel. Defendant thereupon proceeded with his defense, calling various defense witnesses, at the conclusion of which defendant was found guilty of the grand theft charge.

### ISSUES

Two basic issues are tendered to this court by defendant:

1. Did the trial court abuse its discretion in denying defendant's midtrial request to relieve him of pro. per. status and to reappoint the deputy public defender who had represented him prior to trial?

2. Was the use of the photographic lineup depicting defendant with five photographs of other suspects who did not have bad eyes similar to defendant's bad eye prejudicial error in that it was unnecessarilly suggestive and conducive of irreparable mistaken identification?

### RESOLUTION OF ISSUES

### THE REFUSAL OF THE TRIAL COURT TO RELIEVE DEFENDANT OF PRO. PER. STATUS AND REAPPOINT THE PUBLIC DEFENDER

### I

In contending that the trial court abused its discretion in refusing to relieve defendant of his pro. per. status and reappoint the public defender, defendant relies on *People v. Elliott* (1977) 70 Cal.App.3d 984 [139 Cal.Rptr. 205], as well as *People v. Cruz* (1978) 83 Cal.App.3d 308 [147 Cal.Rptr. 740]. ■ These cases discuss certain elements to be considered in determining the propriety of the denial of a defendant's request to withdraw his waiver of counsel after having been granted

pro. per. status. The *Cruz* court discussed the matter as follows: "The court, in *People* v. *Elliot[t]* (1977) 70 Cal.App.3d 984 [139 Cal.Rptr. 205], suggested the criteria to be used by an appellate court in reviewing the propriety of a trial court's denial of a defendant's request to withdraw his waiver of counsel: 'Relevant factors should include, among others, the following: (1) defendant's prior history in the substitution of counsel and in the desire to change from self-representation to counsel-representation, (2) the reasons set forth for the request, (3) the length and stage of the proceedings, (4) disruption or delay which reasonably might be expected to ensue from the granting of such motion, and (5) the likelihood of defendant's effectiveness in defending against the charges if required to continue to act as his own attorney.' (70 Cal. App.3d at pp. 993-994.) Further, the *Elliot[t]* court stated that it is the duty of the trial court to establish a record based upon the above factors." (*People* v. *Cruz, supra*, 83 Cal.App.3d at pp. 319-320.)

It is defendant's position that if the trial court had reasonably considered all of such criteria, it would have concluded that the public defender should have been reappointed and that a failure to so reappoint the public defender was an abuse of discretion. It can be reasonably concluded from the record that during the hearings regarding defendant's requests, the trial court did in fact give careful consideration to all aspects of the requests which might relate to these criteria. ■ While the consideration of all of these criteria is obviously relevant and helpful to a trial court in resolving the issue, they are not absolutes, and in the final analysis it is the totality of the facts and circumstances which the trial court must consider in exercising its discretion as to whether or not to permit a defendant to again change his mind regarding representation in midtrial. For example, while the prior history of a defendant indicating that he has previously requested changes from self-representation to counsel representation may be important in denying the request if the history demonstrates a proclivity to do so, the fact that a defendant has no such history does not preclude the court from denying the request if other factors mitigate against it. Like the other criteria, it is only one factor of several which the court must consider in exercising its discretion in a reasonable way.

## II

■ Considering the totality of the circumstances, it appears that the trial judge reasonably exercised her discretion in refusing defendant's request to reinstate counsel. His initial request for counsel other than

the public defender was without foundation, as the court correctly found at the hearing that no conflict existed between defendant and the public defender, and there was no showing made that the deputy public defender and the deputy district attorney improperly approached any witnesses jointly or did anything else to violate any of defendant's rights. Consequently, defendant's request for private counsel was properly denied.

Defendant's request for reinstatement of the public defender as his counsel was not made until after the prosecution had called all of its four witnesses and rested, which clearly distinguishes the case from *Elliott* and *Cruz*. In *Elliott*, defendant had been represented by the public defender at the preliminary hearing, but on motion of the defendant at the time the case was called for trial, he was granted pro. per. status. After the jury was selected, but before opening statements were made or any evidence was taken, defendant requested to be relieved of his pro. per. status and have the public defender appointed again as his counsel. The denial of this was held to be an abuse of discretion. In *Cruz*, defendant's request to withdraw his previous waiver of the public defender as appointed counsel and for the reappointment of the public defender was made before trial on the date originally set for trial, and denial of the motion by the trial court was also held to be an abuse of discretion. It is important to note that in both *Elliott* and *Cruz*, the requests were made *before any evidence was taken*, whereas in the instant case the request for reinstatement of the public defender was not made until *after the People had completed their case and rested*. It was not until that point in time that defendant apparently became aware of the fact that the prosecution had presented a strong case and that he would more than likely be convicted. Considering these facts, the trial court could reasonably conclude, as can be inferred from the record, that defendant did not in fact make his requests in good faith, but rather with the hope that it might lay the ground work for a subsequent reversal on appeal. While defendant would have liked the court to believe that his motivation for the request was simply that he was unable to adequately represent himself, it was the fact, as already indicated, that court procedures and trials were not new to him. As a matter of fact, a reading of the reporter's transcript would indicate that defendant was articulate and able to handle himself well during the proceedings. It can be reasonably inferred that the trial court concluded, as did Justice Kaus in his reluctant concurring opinion in *Cruz*, that a "game" was being played by the defendant in manipulating the system to his advantage rather than making motions regarding counsel in good faith. Lastly, it

was also apparent that at least a two-week delay would be inevitable if the public defender were reinstated in the case, with no assurance that all of the prosecution's witnesses would again be available when required for the repetition of their testimony.

While it may be difficult to define the concept of judicial discretion with precision (*People v. Giminez* (1975) 14 Cal.3d 68 [120 Cal.Rptr. 577, 534 P.2d 65]), it may not be quite as difficult to determine from a given set of facts when a trial court has clearly abused its discretion. ■ It has abused its discretion when it acts in an arbitrary, irrational, capricious or whimsical way. (*In re Cortez* (1971) 6 Cal.3d 78 [98 Cal.Rptr. 307, 490 P.2d 819].) This court has no difficulty in concluding that the trial judge in the instant case did not so act, but on the contrary acted within reasonable parameters in ruling on said motions.

It should also be noted that the reversal in *Cruz* was necessitated by a combination of errors in that abuses of discretion were found in the trial court granting pro. per. status initially, in refusing a later request to withdraw the waiver of counsel, and lastly in refusing to grant a motion for continuance to prepare for trial after the motion for reinstatement of counsel was denied. In *Elliott*, even though the court found an abuse of discretion on the part of the trial court in refusing to permit the withdrawal of the waiver of counsel, it did not reverse because it was unable to say that it was reasonably probable that a result more favorable to the defendant would have been reached in the absence of such error. ■ The same is true in the instant case, since the evidence of defendant's guilt was substantial, and even assuming arguendo that there was an abuse of discretion, we are also unable to say that it is reasonably probable that a result more favorable to defendant would have been reached even if the trial court had granted defendant's motion to reinstate counsel.

### THE PROPRIETY OF THE USE OF THE PHOTOGRAPHS FOR PRETRIAL IDENTIFICATION OF DEFENDANT

### I

Defendant's basic contention regarding the pretrial use of defendant's photograph along with the photograph of five other individuals is that defendant was the only one in the photographs with a bad eye, and that, therefore, the photographs were unnecessarily suggestive and conducive

to mistaken identification, citing *Neil* v. *Biggers* (1972) 409 U.S. 188 [34 L.Ed.2d 401, 93 S.Ct. 375]. ■ While photographic lineups may well be improper where only one participant possesses a distinctive feature, it will not constitute a ground for reversal unless there was substantial likelihood of irreparable misidentification. (*Simmons* v. *United States* (1968) 390 U.S. 377 [19 L.Ed.2d 1247, 88 S.Ct. 967].) There is no substantial likelihood of such irreparable misidentification where the in-court identification of defendant is in fact based on the observations of the defendant by the witnesses at the scene of the crime or is based upon their having known the defendant prior to the commission of the crime. (*People* v. *Caruso* (1968) 68 Cal.2d 183 [65 Cal.Rptr. 336, 436 P.2d 336].)

## II

■ It is questionable whether the mere fact that the defendant was the only person in the photographs with a bad eye was improperly suggestive, as it represents only one of many physical characteristics of a face which could be readily identifiable. The difficulty of finding photographs of individuals with bad eyes similar to that of defendant is also apparent. However, even assuming arguendo that the use of the photographs was unduly suggestive, the evidence indicates strongly that there was no substantial likelihood of irreparable misidentification in view of the fact that both Mr. and Mrs. Alter had seen defendant in the past and based their identification of him on their prior knowledge of him and not the photographs. As is apparent from the testimony, Mr. Alter had known defendant for a number of months as a customer of the clothing shop, had seen him between five and ten times prior to the crime, had carried on a number of conversations with him and had even lent him money on the day before the crime. In addition, defendant had attempted to sell an object to Mr. Alter on the day before the crime. Mr. Alter also testified that he clearly saw defendant leaving the shop within an hour of the time that it was ascertained that the purse was missing. Mr. Alter further testified that when he looked at the photographs on January 18, he immediately saw defendant's face and did not look at the other faces, the reason advanced by Mr. Alter as to why he did not look at the other faces was because "this was the suspect." He recognized defendant's photograph in the center immediately without looking at the other faces.

While Mrs. Alter had not known defendant before June 18, she had seen him in the shop that morning before the purse was taken, had

spoken with him while face-to-face, had seen his profile and could see that he had a bad eye. He was in her presence for an appreciable period of time, and she did not merely see him as a victim of one committing an instantaneous and fleeting crime. She quickly identified defendant from the photographs only because she recognized the face of defendant as being the person who came into her store. When she was shown the photographs, she was cautioned by the officer that she should not conclude nor guess that the photographs contained the picture of the person who committed the crime, that she was not obligated to identify anyone, and was otherwise cautioned to be careful in making any selection of the perpetrator from the photographs. Miss Bradford likewise immediately identified defendant from the photographs and said that she had seen him and talked to him on the morning in question.

Based upon the evidence mentioned above, it can reasonably be concluded that the in-court identification of defendant by the witnesses was based upon their own knowledge of defendant and not upon the photographs. Consequently, the evidence does not demonstrate that the in-court identification was tainted by the use of the photographs, and as a matter of fact, the contrary is demonstrated by the evidence. Defendant has not demonstrated any prejudice because of the use of the photographs. (*People* v. *Harris* (1971) 18 Cal.App.3d 1, 6 [95 Cal. Rptr. 468]; *People* v. *Brown* (1969) 273 Cal.App.2d 109 [77 Cal.Rptr. 863].)

The judgment is affirmed.

Jefferson (Bernard), Acting P. J.,* and Hanson (Thaxton), J., concurred.

---

*Retired Presiding Justice of the Court of Appeal sitting under assignment by the Chairperson of the Judicial Council.