[Crim. No. 36569. Second Dist., Div. One. Nov. 13, 1980.]

**THE PEOPLE, Plaintiff and Respondent, v.
LARRY EARL SMITH, Defendant and Appellant.**

38

COUNSEL

Andrew Edward Smyth for Defendant and Appellant.

George Deukmejian, Attorney General, Robert H. Philibosian, Chief Assistant Attorney General, S. Clark Moore, Assistant Attorney General, William R. Weisman and Carla M. Singer, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

LILLIE, J.—A jury found defendant guilty of four counts of robbery and to be true allegations that he used a handgun in the commission of

each offense (counts I, II, IV), and inflicted great bodily injury (count III); and that he had two prior felony convictions (murder, 1968; robbery with use of firearm, 1974). He appeals from the judgment.

On March 31 the apartment of Michael Milligan (count IV) was entered and ransacked in his absence, and personal property belonging to him and Bailey, a house guest, was stolen. (At trial defendant was wearing a pair of Bailey's pants). Defendant parked a black Cadillac in the subterranean garage of Milligan's apartment house leaving a blond woman (Debra Sue Phelps)[1] standing by the car's open door; when Milligan arrived home he saw the Cadillac which blocked entry to his parking space and defendant carrying his (Milligan's) stereo equipment to the car; Milligan ran out and called his neighbors then saw defendant again at the side of the building holding a gun; defendant ran to the car which he and Phelps entered and sped away followed by Milligan's neighbor Henry Yelda. Driving fast, erratically and dangerously to avoid apprehension, defendant was finally able to elude Yelda who did record the license number of the Cadillac (838 DUL). Another neighbor of Milligan, Sally Peterson, observed the Cadillac (838 DUL) come "screeching" up from the garage and take off.

About midnight on April 2 as Charles McDonald (count III) unlocked the door to his house in Hermosa Beach, defendant came up behind him, held a gun to his head and demanded money; defendant took $45, credit cards, watch and ring from McDonald and broke his hand removing the ring; defendant then hit him over the head, kicked him and left.

On April 2 defendant and Phelps went to a Texaco station (count II) in Manhattan Beach in a Volkswagen and asked permission of Albert Ramirez, the attendant to use the restrooms. At 1:45 a.m. defendant returned alone; he held a gun, demanded money of Ramirez, robbed him, and hit him over the head with the gun.

At 10:20 p.m. on April 5 at El Segundo defendant entered Woody's restaurant (count I) with a gun; he robbed Pamela Robinson, an employee working at the counter, of $1,700 which she took from the safe and cash register under threats of being shot; he forced her to put the coins in a Union Bank bag, the remainder in a "Woody's" bag; he then

---

[1]Debra Sue Phelps was a codefendant with defendant and entered pleas of guilty to counts I, II and IV; she is not involved as a party to this appeal.

ordered the customers and employees into the dishwashing area, robbed them, ordered them to sit on the floor and the men to remove their pants which he threw into the dining room and left. Others also observed the robbery and identified defendant as the robber—Mariko Phillips, an employee who helped put the money in the bags, and Andrew Kaye, a customer.

Fifteen minutes after the Woody's robbery, defendant accompanied by Phelps, drove a black Cadillac (838 DUL) through a wall of the El Camino Motel in Manhattan Beach. When Officer Tranbarger arrived he observed a 10-foot section of the wall missing and defendant near the car; defendant produced no identification upon request; defendant was dressed in a brown suit but on the back seat were faded blue jeans and a navy-blue windbreaker; because he had heard a broadcast regarding the armed robbery at Woody's by a black male wearing faded blue jeans and a navy-blue windbreaker, he ran a radio check and found an outstanding felony warrant on the car license plate and was warned the occupants should be considered armed and dangerous. He arrested defendant.

Officer Lastra advised Officer Frazier that a blond woman possibly armed and dangerous was in the area nearby. Officer Frazier apprehended Phelps on the grounds; she carried a brown bag; he felt in the bag what he believed to be a gun but upon searching it he found instead a paging device, defendant's temporary license and jewelry (including McDonald's gold ring). Officer Lastra looked about the grounds of the motel and found a ladies' purse at the foot of the stairway going to the basement of the motel building; the purse was 15 to 20 feet from the car; he looked inside and found numerous pieces of stolen jewelry and a jeweler's receipt. Found in the black Cadillac were a pair of light blue trousers, blue knit tank top, blue nylon jacket and gloves.

After defendant's arrest Mariko Phillips and Pamela Robinson were brought to the scene to see if they could identify Woody's robber; Phillips was positive defendant was the robber, Robinson was equivocal at first but said defendant fit her description of the robber, and then identified him. When defendant was booked at the station officers removed from him a watch (belonging to McDonald). Later, pursuant to search warrant, two guns were removed from the black Cadillac, one of which was a loaded .45 caliber; the other was loaded with two .22 caliber magnum bullets; also found in the car were a stocking mask and a pair

of gloves, two bags containing $1,751 and change contained in two bank bags, one inside the other, and a pair of shoes.

The defense was one of mistaken identity and alibi. Debra Phelps at first testified that on April 5 defendant called her that his Volkswagen had broken down, and she and Frank Timmer, who drove her black Cadillac, started for the location to help him but Timmer stopped at a restaurant on Sepulveda, left her in the car, returned 20 minutes later and put something under the hood; she then drove to where defendant was stalled, left Timmer there and drove defendant to the El Camino Motel where he ran into a wall when she got out to inquire about rooms. Later she changed her testimony and admitted she went with defendant to Woody's, remained in the car while he was in the restaurant one-half hour; identified the gun he had that night and the jacket and tank top he wore; and said she had defendant's handbag in her possession. She admitted pleading guilty to robberies at Woody's (count I), Texaco station (count II) and Milligan's apartment (count IV). Other witnesses testified in an attempt to show defendant's identity had been mistaken before. Defendant denied the robberies; he testified he was shown Milligan's apartment by the manager with the idea of renting it, and acquired several items of personal property for agreeing to help someone move. He said he often went to the Texaco gas station because he was an Amway distributor. On the night his car stalled (April 5) Phelps and Timmer arrived in the Cadillac; he and Phelps left him and his stalled car and went to a motel; his foot hit the accelerator and he went through the wall; he lifted the hood to inspect damage and saw a bag containing a police baton.

## I

Appellant contends that his in-court identification by Pamela Robinson and Mariko Phillips should have been excluded because it was tainted by an impermissibly suggestive one-person showup at the scene of the arrest at the motel. He argues that the two women are improperly transported to the motel to identify him and that their failure to positively identify him because he was not dressed as the robber is evidence of an impermissibly suggestive showup. ■ A single-person showup is not necessarily unfair and must be assessed in the light of the totality of the circumstances. (*People* v. *Bisogni* (1971) 4 Cal.3d 582, 587 [94 Cal.Rptr. 164, P.2d 780].) Those factors to be considered in determining whether a one-person showup was justified and the confrontation procedure was so suggestive as to lead to the likelihood of

misidentification are """"the opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of the witness' prior description of the criminal, the level of certainty demonstrated by the witness at the confrontation, and the length of time between the crime and the confrontation.'" (*People* v. *Gomez* (1976) 63 Cal.App.3d 328, 337 [133 Cal.Rptr. 731].)" (*People* v. *Hall* (1979) 95 Cal.App.3d 299, 309 [157 Cal.Rptr. 107].)

█ Applying the foregoing factors, we cannot conclude that the single-person showup here was unreasonable. As in *Hall*, the "promptitude of identification" was a valid reason for conducting a one-person showup, and "identification under such circumstances has much greater indicia of reliability than one made after a lapse of a substantial period of time." (P. 310.) The two witnesses were brought to the motel within 20 minutes after the Woody's robbery. Further, their observations of defendant were made during a highly significant encounter which could only encourage them to remember the robber's face. It was Pamela Robinson working at the counter the robber approached and of whom he demanded money; he held a gun and was only three or four feet away from her; she was in his presence fifteen minutes before she went to the safe for the money, and he told her if she did not get the money he would start shooting and everyone's life depended on her; at his order she put the coins in a Union Bank bag and the rest of the cash in a Woody's bag; then he ordered all persons in the restaurant to the dishwashing area and robbed them. Phillips, who worked with Robinson saw the robber walk into Woody's; he ordered her to hurry with putting the coins into the bag; he became agitated when she told him employees could not get into the safe; she stood about one foot away from him.

These two witnesses had direct eye contact with the robber; they were close to him for a considerable time (about 15 minutes) and had ample opportunity to observe him during the robbery. Both witnesses observed the robber's face, build, appearance and clothing—Robinson said he was black, wore blue jeans, blue windbreaker, a blue fishnet tank top wrapped around his head, and blue and white shoes; Phillips described him as black, in his middle twenties and five feet eight inches or nine inches tall, wearing athletic shoes and a blue knit tank top over his head. The description given to police proved accurate.

When Pamela Robinson was taken to the motel she looked at defendant dressed in a blazer and at first was uncertain he was the robber

although "he had the same general build as the person with the gun," then she was shown the clothing found in the car and she identified defendant as the robber. At trial she testified there was no doubt in her mind that defendant was the person who robbed her and positively identified him as the robber. Mariko Phillips made positive identification of defendant as the robber at the motel; she testified that at the scene she said "the man was the same height, the same body build, the same—he was black but he had different clothes on and *I was positive that that was the man* but he had different clothes on. He had changed his clothes." (Italics added.)

■ The trial court's finding that the showup identification procedure was not unfair is supported by substantial evidence and we will not disturb it. (*People* v. *Gomez* (1976) 63 Cal.App.3d 328, 335 [133 Cal. Rptr. 731].) ■ But even so, the record affirmatively demonstrates that the prosecution met its burden of showing that the in-court identification of the two witnesses was based on an independent source (*People* v. *Rodriguez* (1977) 68 Cal.App.3d 874, 881-882 [137 Cal. Rptr. 594]), a source independent of the on-the-scene identification. The in-court identification of Robinson and Phillips was based on observations of defendant during the commission of the robbery which gave them ample opportunity to observe him.

## II

Alberto Ramirez was not present at trial and a transcript of his testimony taken at the preliminary hearing was admitted in evidence. Appellant contends the trial court erred because the prosecutor did not exercise due diligence in attempting to locate Ramirez. He claims that the prosecution was really not interested in having Ramirez appear because his testimony was weak, and therefore made no real effort to locate him; and further, prosecuting authorities should have gone to Mexico to find him.

■ Before such testimony can be used under section 1291, Evidence Code, the prosecutor must demonstrate diligence in attempting to procure the attendance of the witness (*People* v. *Backus* (1979) 23 Cal.3d 360, 388 [152 Cal.Rptr. 710, 590 P.2d 837].) Whether due diligence has been shown is a factual question and the trial court's determination on the issue will not be disturbed on appeal absent a showing of abuse of judicial discretion. (*People* v. *Backus*, p. 388; *People* v. *Williams* (1973) 9 Cal.3d 24, 35 [106 Cal.Rptr. 622, 506 P.2d 998].)

An investigator for the district attorney several times attempted to contact Ramirez by mail and sent subpoenas to his last known local address but received no reply from him; he went three times to his last known address as well as to his place of employment without finding him; he finally located Ramirez' brother and twice interviewed him and spoke to numerous friends of Ramirez; he could not locate Ramirez but finally obtained an address for his parents in Zacatecas and made several unsuccessful attempts to contact them after he learned Ramirez' brother believed he was somewhere in Guadalajara but could not be reached; he also checked various Kern County and Los Angeles County agencies and facilities with which Ramirez might have contact and checked with the United States Immigration authorities.

■ The prosecutor sought out friends, relatives and a former employor. No abuse of judicial discretion in the finding of due diligence to locate Ramirez has been shown and the testimony of Ramirez was properly admitted pursuant to section 1291, Evidence Code. Without merit is the contention that the investigator should have gone to Mexico to check the address of Ramirez' parents. A failure to travel out of the country to explore a lead is not sufficient in and of itself to show lack of diligence.

### III

Appellant contends that McDonald's ring found in his handbag during a search incident to the arrest of Debra Phelps should have been suppressed as the result of an unlawful search, citing *People* v. *Pace* (1979) 92 Cal.App.3d 199 [154 Cal.Rptr. 811]. He contends for the first time on appeal that the bag was unlawfully seized and searched. Defendant twice argued a motion to suppress, the first related to probable cause to arrest him and the second, to lack of probable cause to search the Cadillac on the ground the search warrant was based on an illegal search of the vehicle. On the latter motion the record shows an evidentiary hearing. However, the record also discloses that on neither of these motions did the defendant raise the issue of an illegal search of his handbag found in Phelps' possession at the time of her arrest. ■ He is precluded from raising the issue for the first time on appeal. (*People* v. *Gallegos* (1971) 4 Cal.3d 242, 249-250 [93 Cal.Rptr. 229, 481 P.2d 237]; *People* v. *Flores* (1968) 68 Cal.2d 563, 567 [68 Cal. Rptr. 161, 440 P.2d 233]; *People* v. *Manning* (1973) 33 Cal.App.3d 586, 601 [109 Cal.Rptr. 531]; *People* v. *Lyons* (1970) 9 Cal.App.3d 58, 62 [87 Cal.Rptr. 799].)

## IV

In May at the time of arraignment Mr. Legg, private counsel, was appointed to represent defendant. At a pretrial conference on June 19 counsel advised the court it was defendant's desire to proceed in pro. per. Counsel and the trial judge questioned defendant at length, warned him of the pitfalls and dangers of self-representation and admonished him that self-representation was unwise and that he would be placed in a position of great disadvantage to his detriment. Defendant was unequivocally told he would be held to the same standard as an attorney and presumed to know all the law necessary to defend himself; and the court "conveyed to defendant in no uncertain terms the foolishness of · anyone (even attorneys) representing himself in a criminal matter." (*People* v. *Harris* (1977) 65 Cal.App.3d 978, 985-986 [135 Cal.Rptr. 668].) ■ Defendant knowingly and voluntarily waived his right to representation and the trial court had no choice but to grant defendant's request and relieve appointed counsel. (*People* v. *Wilks* (1978) 21 Cal.3d 460, 467 [146 Cal.Rptr. 364, 578 P.2d 1369]; *People* v. *Fabricant* (1979) 91 Cal.App.3d 706, 712 [154 Cal.Rptr. 340]; *People* v. *Jackson* (1978) 88 Cal.App.3d 490, 496 [151 Cal.Rptr. 688].)

The trial started on September 5; on the second day of trial on the afternoon of September 6,[2] defendant submitted to the court his written "motion to be represented by adequate counsel" in which he concluded he could not defend himself adequately. The trial judge denied the motion and at length established in the record certain relevant factors (see *People* v. *Elliott* (1977) 70 Cal.App.3d 984 [139 Cal.Rptr. 205]): in May experienced trial counsel was appointed for defendant; on June 18 although cautioned and admonished by the trial judge, defendant requested he be permitted to represent himself and the judge "respected his wishes" and granted defendant's request for self-representation; the trial was set for six weeks later at his request; thereafter numerous documents and requests were filed by defendant and he was extended pro. per. privileges; five days before trial he filed affidavit of prejudice against the trial judge (§ 170.6, Code Civ. Proc.) and the cause was transferred; the witnesses had been in court since Tuesday (Sept. 4); defendant moved for appointed counsel on the second day of trial; the jury had been selected and sworn, opening statements had been made, an

---

[2] Actually it was the third day because the cause was called for trial on Tuesday, September 4 and nine prosecution witnesses were present and ordered to return to court on September 5.

evidentiary suppression hearing was had at the request of defendant at which witnesses testified, an opening statement was made, one of the principal witnesses (Pamela Robinson) testified, was examined and excused, numerous witnesses had been in court and inconvenienced; in one serious matter still pending defendant is being represented by private retained counsel and in another serious matter he is being represented by court-appointed experienced counsel, and a delay would be of "tremendous inconvenience" to witnesses. Appellant cites as error the denial of his motion, relying on *People v. Elliott* (1977) 70 Cal.App.3d 984 [139 Cal.Rptr. 205].

In *People v. Elliott*, at the time the cause was called for trial, defendant was granted pro. per. status relieving the public defender; after the jury was selected but before opening statements or any evidence was taken he requested to be relieved of his pro. per. status and have the public defender reappointed; his request was denied. The court held this was an abuse of discretion but the error was harmless. *People v. Smith* (1980) 109 Cal.App.3d 476 [167 Cal.Rptr. 303] is apposite here. Defendant was originally represented by the public defender; before trial he moved to represent himself and relieve the public defender; the court examined defendant, warned and admonished him at length and when satisfied he was knowingly and intelligently waiving his right to counsel, relieved the public defender; defendant was granted a short continuance; after direct examination of the prosecution's first witness, defendant changed his mind and requested the court to appoint an attorney for him; the request was denied; after the prosecutor rested on the second day of trial, defendant made a second request and the same was denied when the public defender stated she would move for a mistrial and would require substantial time in which to prepare. This court held that the trial court reasonably exercised its discretion in refusing defendant's request, citing *People v. Cruz* (1978) 83 Cal.App.3d 308 [147 Cal.Rptr. 740] which quotes from *People v. Elliott, supra*, 70 Cal.App.3d 984, pointing up certain elements to be considered in determining the propriety of the denial of defendant's request to withdraw his waiver of counsel after having been granted pro. per. status: ""Relevant factors should include, among others, the following: (1) defendant's prior history in the substitution of counsel and in the desire to change from self-representation to counsel-representation, (2) the reasons set forth for the request, (3) the length and stage of the proceedings, (4) disruption or delay which reasonably might be expected to ensue from the granting of such motion, and (5) the likelihood of defendant's effectiveness in defending against the charges if required to

continue to act as his own attorney." (70 Cal.App.3d at pp. 993-994.) Further, the *Elliot*[*t*] court stated that it is the duty of the trial court to establish a record based upon the above factors.' (*People* v. *Cruz, supra,* 83 Cal.App.3d at pp. 319-320.)" (*People* v. *Smith* (1980) 109 Cal.App.3d 476, 484 [167 Cal.Rptr. 303].) *People* v. *Cruz, supra,* 83 Cal.App.3d 308 also held, as did *People* v. *Elliott* (although the judgment was affirmed because of harmless error), a denial of defendant's motion to be relieved of pro. per. status would be an abuse of discretion; however, the request for reappointment of the public defender also was made before trial on the date originally set for trial.

*Elliott* and *Cruz* are distinguishable on their facts. (1) In *Elliott* the motion was made before opening statement or any evidence was taken; in *Cruz*, prior to assignment of the cause to a courtroom for trial. In the instant case the motion was made on the second day of trial after a crucial witness (a victim) had already testified. (2) In *Elliott* the delay which reasonably might be expected were the motion granted was estimated at ten days; in *Cruz* three weeks. In the instant case the time was inestimable considering a mistrial, new counsel's need for time in which to prepare in light of the nature of the crimes and special allegations, the large number of victims and witnesses and review of proceedings already had, including various motions. This is similar to *People* v. *Smith, supra,* 109 Cal.App.3d 476. But in *Elliott, Cruz* and *Smith*, defendant sought reappointment of the public defender who had represented him before. In the instant case private counsel had been appointed for defendant and the public defender was unfamiliar with his case. (3) In *Elliott* the reason for the request was valid and it was obvious defendant's effectiveness in defending against the charges was nil because the request was made after the prosecutor indicated his intention to make an offer of proof relative to an uncharged offense; in *Cruz* the defense of unconsciousness was complex and one defendant could not handle. Here also defendant concluded in his motion, briefly and without elaboration that he could not defend himself adequately, he did not specify what problem, if any, existed and the record establishes no unusual or complex actions of the prosecutor; and defendant has far more than the average knowledge of court proceedings.

In denying defendant's motion the trial judge considered all of the *Elliott* and *Cruz* criteria, and in light of the totality of the circumstances reasonably exercised his discretion in denying the motion. "While the consideration of all of these criteria is obviously relevant and helpful to a trial court in resolving the issue, they are not absolutes,

and in the final analysis it is the totality of the facts and circumstances which the trial court must consider in exercising its discretion as to whether or not to permit a defendant to again change his mind regarding representation in midtrial." (*People* v. *Smith, supra*, 109 Cal. App.3d 476, 484.)

It is significant that request for appointment of counsel was not made until the second day of trial. The victim in count I (Pamela Robinson) had testified, was cross-examined and excused. At this point it is apparent that defendant became acutely aware that one count had been proved by the prosecution and that Robinson had positively identified him as the robber. We are not prepared to go as far as to say that defendant did not make the motion in good faith, but we suspect he was trying to manipulate the system to his advantage; this suspicion also entered the mind of the trial judge who said "And I think the request, at this time, comes—is entirely untimely. As a matter of fact, I wonder if maybe the defendant isn't playing games with the American Judicial System." Then reciting that defendant has two serious matters pending for one of which he employed private counsel and the other, has the services of a court-appointed counsel, continued: "He is represented by experienced counsel in that matter but notwithstanding that fact, up to this very day, he has insisted on representing himself in this case and because of the lapse of time and the tremendous inconvenience to witnesses, in the interest of preservation of the dignity of the American Judicial System...this request should not be granted." In his motion for appointment of counsel defendant briefly asserted without support "I conclude that I cannot defend myself adequately." But it is a fact that court procedures and trials were not new to defendant; he was articulate and well able to handle himself during the proceedings. He made numerous motions, some written, others oral, some successful, some unsuccessful—motion for continuance from July 30 to September 4; discovery motion; affidavit of prejudice under section 170.6, Code of Civil Procedure, resulting in transfer from Judge Fredrickson to Judge Lawler; motion for severance of counts; motion for appointment of an expert pursuant to section 730, Evidence Code (to testify "in regards to eyewitness identification"); motion for hypnosis examination (to help him remember the facts); motion for discovery; motion for suppression of evidence (§ 1538.5, Pen. Code); motion for evidentiary hearing; motion for court order to interview Debra Phelps, issuance of subpoena and body attachment for Carla Tillman (defendant's runner); request for court to serve two subpoenas (county jail system too slow); petition

for habeas corpus; motion for evidentiary hearing on probable cause (to search Cadillac); motion to suppress evidence for which court ordered production of Debra Phelps (challenge to search warrant for Cadillac based on illegal search), two witnesses testified and defendant argued the motion; motion for suppression of in-court identification of witnesses (who identified him in on-the-scene showup) argued by defendant; and various objections, motions and legal arguments to the court. ▮ The record demonstrates there was nothing ineffective about defendant's self-representation.

The judgment is affirmed.

Spencer, P. J., and Auerbach, J.,* concurred.

---

*Assigned by the Chairperson of the Judicial Council.