Filed 1/17/14  P. v. Jones CA3

NOT TO BE PUBLISHED

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(San Joaquin)

----

|  |  |
|---|---|
| THE PEOPLE,<br><br>        Plaintiff and Respondent,<br><br>    v.<br><br>TOMMY EUGENE JONES,<br><br>        Defendant and Appellant. | C068625<br><br>(Super. Ct. No. SF113186A) |

A jury found defendant Tommy Eugene Jones guilty of 13 sex offenses against minors, and the trial court sentenced him to state prison for 57 years 4 months, plus 25 years to life.  On appeal, he argues the trial court (1) improperly denied his motion for a continuance; (2) abused its discretion by denying his motion to withdraw his waiver of counsel and to reappoint counsel; and (3) erred in striking his testimony in violation of his right to testify in his own defense.

As none of the contentions has merit, we affirm.

1

FACTS

The first of three victims is defendant's daughter, S., who lived with defendant and her stepmother, Felicia. When S. was 14 years old and in eighth grade, she got in trouble at school. Later, at home, defendant asked if she "wanted a whoopin' [*sic*]" or if she wanted "to play." S. chose "to play" because she thought that meant something fun. Defendant proceeded to have sex with her on the living room floor. He continued to have sex with S. about three times per week or more until she was 18 years old.

The second victim, A., was S.'s best friend from school. When A. was 16 years old, defendant drove her and S. home from a football game. He dropped S. off at a friend's house, and although he was supposed to take A. to her grandmother's house, he instead took A. back to his house. Defendant had sex with her there, and then took her home. When she was 17 years old, defendant had sex with her a second time after he picked her up from school early and took her back to his house. He pressured A. into having sex with him.

The third victim, E., was Felicia's niece, and lived with defendant from age six to nine. When she was approximately six years old, defendant reached inside her pants and touched her vagina. On separate occasions, he would attempt to put his penis in her vagina. This happened every week for three years while she lived with defendant. He also rubbed his penis on her butt and had her orally copulate him.

PROCEDURE

Defendant was charged in an indictment with four counts of lewd and lascivious acts on a 14- or 15-year-old child (counts one through four; Pen. Code § 288, subd. (c));[1] five counts of forcible rape (counts five through nine; § 261, subd. (a)(2)); two counts of unlawful sexual intercourse with a minor (counts ten through eleven; § 261.5, subd. (c));

---

[1] All further statutory references are to the Penal Code unless otherwise specified.

one count of continuous sexual abuse of a minor under the age of 14 (count twelve; §
288.5, subd. (a)); and one count of committing a sex crime against a child under 10 years
of age (count thirteen; § 288.7, subd. (a)).

Defendant made a *Faretta*[2] motion to represent himself, which the trial court
granted on November 15, 2010.

A jury found him guilty on all counts. The trial court sentenced him to state
prison for an aggregate determinate term of 57 years 4 months on counts one through
twelve, and an indeterminate term of 25 years to life on count thirteen, to be served
consecutively.

DISCUSSION

I

*Denial of Motion to Continue*

Defendant contends that the trial court abused its discretion when it denied
defendant's motion to continue the trial after his investigator quit a few weeks before
trial. He claims that it requires reversal per se. We conclude the trial court did not abuse
its discretion.

A.     *Relevant Procedure*

On November 15, 2010, the trial court granted defendant's *Faretta* motion to
represent himself. At the *Faretta* hearing, the trial court appointed a new investigator to
assist defendant since defendant had fired the two previous investigators assigned to his
case. The court specifically discussed the outstanding issue regarding defendant's need
to examine the cell phone seized from him. For the time being, the court kept the trial
date of January 14, 2011.

---

**2**     *Faretta v. California* (1975) 422 U.S. 806, 835 [45 L.Ed.2d 562, 581-582]
(*Faretta*).

3

On December 20, 2010, defendant filed a discovery motion to compel discovery compliance and a motion to continue the trial. At a readiness conference on January 3, the court granted defendant's motion to continue, and set a trial setting conference for January 19, 2011. By court order, the investigator visited with defendant after the readiness conference on January 3, 2011.

At the trial setting conference on January 19, 2011, after the court discussed subpoenaed documents, it set a motion hearing date of February 25, 2011, and a trial date of March 11, 2011.

On February 25, 2011, defendant notified the court that he was unable to play an audio disc provided by the prosecution. The prosecutor stated that she intended to meet with the investigator to confirm whether he possessed all discovery materials, and to remedy the faulty disc, but she was unable to do so, since defendant had not granted the investigator permission to meet with her outside his presence. Defendant then gave the investigator permission to meet with the prosecutor outside his presence, and both the investigator and prosecutor made arrangements to resolve the discovery problems after the hearing. The court set the next motion hearing date of March 9, 2011, but kept the trial date of March 11, 2011.

At the motion hearing on March 9, 2011, the prosecutor informed the court that she had met and reviewed the discovery with defendant's investigator at the prosecutor's office. She stated that defendant had received most of the discovery, with the exception of a handwriting expert's report and reports relating to a new witness to be offered under Evidence Code section 1108. Because the prosecutor notified defendant that she intended to introduce evidence under Evidence Code section 1108, the court found good cause to continue the trial. It vacated the trial date, and scheduled a trial setting for March 25, 2011.

On March 28, 2011, the court set April 26, 2011, as the date for motions in limine and trial. At this point, defendant expressed concern about representing himself because

4

he still needed to obtain a medical expert and another expert to examine his cell phone. The court asked him if he wanted to continue representing himself, and defendant replied that he did not.

The court continued the matter to the next day, March 29, 2011, to determine if an attorney could be appointed who would be ready for trial at the end of April. On March 29, 2011, the court stated that no attorney was currently available so it continued the matter to the next day. On March 30, 2011, after consulting with an attorney, defendant confirmed to the court that he desired to continue representing himself. The court informed defendant that the trial date would remain set for April 26, 2011.

On April 22, 2011, defendant filed a motion to continue the trial because his appointed investigator had informed him on March 30 that he would no longer work on his case due to defendant's high demands. Defendant stated that, he still needed: (1) to obtain a medical expert; (2) to have assistance to subpoena witnesses; and (3) to consult with an expert regarding the cell phone examination.

In denying defendant's motion to continue, the court stated:

"And for the record, let me recite the schedule, the chronology of what's going on here. The Indictment was actually dated October 20th, 2009. Your first court appearance following that was on October 26th. I'm not sure when [Attorney 1] was aboard and when [Attorney 2] went back and forth, but according to the court records [Attorney 2] was appointed on November 3rd, 2009. A *Marsden*[3] was filed against her on February 1st. It was granted. [Attorney 3] was appointed. [¶] . . . [¶]

"There was a motion to continue the trial on April 28th, 2010, which was granted and the trial was set for May 21st, 2010. On June 15th, 2010, the trial was again continued until August 6th, 2010. August 4th, 2010, the motion to continue the trial was

---

**3**    *People v. Marsden* (1970) 2 Cal.3d 118 (*Marsden*).

5

again granted. On September 10th, 2010, a 995 motion was denied. A jury trial was set for -- on September 27th, a setting was made for a jury trial on January 14th, 2011. On November 15th of 2010, a *Faretta* motion was granted. You were allowed to represent yourself. January 3rd, 2011, another motion to continue the trial was granted. An investigator was appointed at that time, and the matter's set for jury trial on March 11th. On February 25th, 2011, a motion to continue trial was filed. That motion was granted. The jury trial was set for today. This now -- this latest motion to continue the trial was filed on April 22nd.

"I'm going to deny the motion to continue the trial, [defendant]. I made it very clear to you when we were here a couple months ago whether you were or were not represented by an attorney, this trial is going forward. That is my intent. [¶] . . . [¶]

"I offered you the opportunity to be represented by counsel which you declined. Apparently that had some influence on your investigator. I'm not sure what his reasoning was. You now find yourself at the eve of trial, and it's time to move this case forward. It's been pending now for more than a year and a half.

"All of these points that you've raised seem to suggest to me you believe there's some sort of global conspiracy against you -- a falsification of records, falsification of transcripts, some sort of conspiracy about the attorneys. I don't know what it's about, but the law does not say you're entitled to continue your trial until you've had the opportunity to exhaust virtually every question in your mind about whether these were accurate and true transcripts, about the backgrounds of everybody who's involved."

B.      *Analysis*

On appeal defendant contends that the trial court abused its discretion when it denied defendant's motion, filed on April 22, 2011, to continue the trial. The court properly exercised its discretion in denying the continuance.

6

A trial court's denial of a motion for continuance is within the trial court's discretion and will not be disturbed on appeal absent an abuse of discretion. (*People v. Wilkins* (1990) 225 Cal.App.3d 299, 304.)

A defendant who represents himself " 'is not entitled either to privileges and indulgences not accorded attorneys or to privileges and indulgences not accorded to defendants who are represented by counsel.' [Citation.] But neither is he entitled to *less* consideration than such persons. In particular he must be given, if he requires it, as much time to prepare for trial as an attorney; and if a reasonable continuance is necessary for this purpose, it must be granted upon timely request." (*People v. Maddox* (1967) 67 Cal.2d 647, 653, original italics.)

Defendant received five prior continuances. By that time, the case had been pending for 18 months, and defendant had been acting in pro per for five of those months. We do not find an abuse of discretion on a failure to grant a sixth continuance because defendant had sufficient time to prepare his defense. Although he claims that his investigator left him abruptly on March 30, 2011, to his detriment, defendant had access to the investigator's services for the three previous months.

Defendant knew the trial would begin on April 26, 2011, whether he was representing himself or represented by counsel. At the hearing on March 30, 2011, after he insisted that he wanted to remain in pro per, the trial court expressly stated, "Okay. [Defendant], at this point then all I can do is tell you that the trial that has now been set [for April 26, 2011, and] will remain as set." Defendant replied, "Okay." He did not object at that time. Under these circumstances, he had adequate time to prepare for trial, whether he was representing himself or represented by counsel.

The trial court did not abuse its discretion when it denied defendant's motion to continue the trial.

## II

### *Self-Representation Revocation Motion*

Defendant contends that the trial court prejudicially erred in denying his request to withdraw waiver of counsel and to reappoint counsel. We find no error.

A.      *Relevant Procedure*

At defendant's arraignment on August 7, 2009, an attorney was appointed to represent him. Defendant filed a *Marsden* motion that was denied on September 10, 2009. A second *Marsden* motion was heard and granted on October 19, 2009, relieving the first attorney and substituting new counsel. A third *Marsden* motion was heard and denied on December 17, 2009. A fourth *Marsden* motion was heard and granted on February 1, 2010, relieving the second attorney and substituting new counsel. A fifth *Marsden* motion was heard and denied on November 15, 2010. Defendant then filed a *Faretta* motion to represent himself, which the court granted on November 15, 2010, relieving the third attorney.

At the *Faretta* hearing, in response to the court's question whether defendant had any specific knowledge about legal matters, he answered affirmatively and stated that he had presented to his attorney a self-prepared legal motion regarding an issue in his case. The court advised him that it was not a good idea for him to represent himself and he would be at a great disadvantage during the proceedings due to his lack of legal training. The court warned that, pro per status does not change the rules of evidence nor will the court be any easier on him. In response, defendant confirmed his desire to represent himself and that he understood the dynamics of self-representation. The court granted his *Faretta* motion.

At the motions in limine hearing on March 28, 2011, defendant expressed his concern about representing himself. In response, the court advised him that representing oneself is not a good idea. The court stated, "I usually tell people it takes the same number of years to train to be a doctor as it would to be a lawyer. Most people wouldn't

8

think of doing surgery on themselves, but the results are almost always the same, painful and ineffective. [¶] Are you sure you wanna do this?" Defendant replied, "No, I don't wanna do it."

The court continued the matter to the next day, March 29, 2011, to determine if an attorney could be appointed who would be ready for trial by the next month. The court warned defendant, "Now, you've already gone through three attorneys. I'm gonna be really blunt with you here: I will not tolerate any game-playing with regard to dumping attorneys in order to stop a trial. It won't happen." Also on March 29, 2011, the court stated that no attorney was currently available and continued the matter to the next day.

On March 30, 2011, when the trial court asked a possible attorney from Lawyer Referral Services if he was available for appointment, the attorney replied to the court, "Your Honor, in speaking with [defendant] this morning, he indicates that he wishes to remain pro per." When the court asked defendant if that was what he wanted to do, he replied, "Yes, Your Honor. That is what I wanted to do. I had had some considerable time to do some thinking, and it's -- it's been very hard. And it's just regarding just the issues that has previously tooken [*sic*] place. So I've decided that I would like to remain pro per." After he attempted to discuss other issues, the court stated, "The only thing on calendar today is for possible appointment of an attorney. And if you don't want an attorney, and you've already chosen under *Faretta* to represent yourself, you have that right to do so." Defendant answered, "Yes, I do." The court continued, "It's against the recommendation, I think, of everybody involved." Defendant replied, "Okay."

Just before the court excused the attorney who may have been appointed to represent defendant, the court asked, "Okay. I will simply inquire one more time, [defendant], do you wish to be represented or do you wanna do this yourself?" Defendant answered, "I [*sic*] do it myself." The court stated, "It's your choice no matter what." Defendant replied, "Okay."

9

On April 26, 2011, during a hearing on in limine motions, and one day before jury selection was to begin, defendant moved to terminate his self-represented status, and requested the trial court to reappoint counsel. He stated that, reading all the material and following up on all the rules was "very difficult" so he was unable to "do trial." Defendant informed the court that he felt "forced" to represent himself because he distrusted his prior attorneys and because his prior attorneys refused to address important issues he felt needed to be addressed. The court stated that he had already refused the services of four experienced attorneys in favor of representing himself, and they were "not going back and forth." Defendant promised that he would not turn down a newly appointed attorney.

The court stated: "I will simply tell you that you have demonstrated to me a number of times that your memory of your recollection is not the same as that reflected in the file. That may be the source of some of your dissatisfaction with your attorneys. I have no idea of anything else of this whole thing.

"I can only tell you that you were admonished. You were told that it was not going to be a 'I want this attorney. Now I'm going to fire him. We're going to get another continuance.' You have had, by my count, five continuances of this trial. There won't be anymore [*sic*]. Now you must prepare to the best of your ability to represent yourself in this trial. As I told you back then, you operate under the same rules as any attorney would. I have to do that by law. I can't bend the rules of evidence or law for you, which means that I understand it's going to be difficult for you to select a jury, to argue within the bounds of the rulings, but we're just going to have to do the best we can."

The court denied his motion and defendant represented himself throughout trial.

B.    *Analysis*

Every defendant has the right to represent himself, as guaranteed by the United States Constitution.  (*Faretta, supra,* 422 U.S. at p. 835.)  When a defendant attempts to terminate his or her self-represented status, we refer to it as a revocation motion.

The California Supreme Court, in *People v. Lawrence* (2009) 46 Cal.4th 186, discussed the factors to consider in reviewing a trial court's ruling on a revocation motion:

"In *People v. Windham* (1977) 19 Cal.3d 121, 128, we explained that while a timely, unequivocal *Faretta* motion invoked the nondiscretionary right to self-representation, a *midtrial* motion was 'addressed to the sound discretion of the court.'  In *People v. Elliott* (1977) 70 Cal.App.3d 984 (*Elliott*), the Court of Appeal concluded the same was true of a midtrial request to revoke in propria persona status and have counsel appointed.  (*Id*. at p. 993.)  Adapting the nonexclusive list of factors to consider mentioned in *Windham*, the *Elliott* court opined that a trial court should consider, along with any other relevant circumstances, '(1) defendant's prior history in the substitution of counsel and in the desire to change from self-representation to counsel-representation, (2) the reasons set forth for the request, (3) the length and stage of the trial proceedings, (4) disruption or delay which reasonably might be expected to ensue from the granting of such motion, and (5) the likelihood of defendant's effectiveness in defending against the charges if required to continue to act as his own attorney.'  (*Elliott*, at pp. 993-994.)

"This court cited *Elliott*'s discretion framework favorably in *People v. Gallego* [(1990)] 52 Cal.3d [115,] 163-164, adding, however, that ultimately the trial court's discretion is to be exercised on the totality of the circumstances, not strictly on the listed factors.  Quoting *People v. Smith* (1980) 109 Cal.App.3d 476, 484, we explained: ' "While the consideration of these criteria [listed in *Elliott*] is obviously relevant and helpful to a trial court in resolving the issue, they are not absolutes, and in the final analysis it is the totality of the facts and circumstances which the trial court must consider

11

in exercising its discretion as to whether or not to permit a defendant to again change his mind regarding representation in midtrial." ' (*Gallego, supra*, at p. 164.) We found no abuse of discretion in the trial court's denial of the *Faretta* revocation request, in light of the defendant's history of counsel change requests, the advanced stage of trial (late in the guilt phase of a capital trial), and the trial court's inability to find an attorney who would take over at that stage without the need to declare a mistrial. [Citations.]" (*People v. Lawrence, supra,* 46 Cal.4th at pp. 191-192, original italics, fn. omitted.)

On appeal, defendant uses the *Windham* factors to argue that the trial court erred by not granting his revocation motion. He states that the *Windham* factors support his contention because: (1) although he had a history of changing counsel, two of his five *Marsden* motions were granted; (2) he had valid reasons for requesting counsel; (3) he made the motion before prospective jurors were impaneled; (4) the prosecution failed to show that a disruption of trial was reasonably likely; and (5) the likelihood of his effectiveness if continuing to represent himself weighed in favor of appointing counsel. We disagree that the trial court erred.

Over an 18-month period, defendant filed five *Marsden* motions, refused representation from four prior attorneys, and attempted to revoke his self-represented status twice. Throughout the process, he received five continuances and received warnings from the court that the trial would go forward on April 26, 2011, regardless of his status of representation. His prior history of substituting counsel and "going back and forth" between pro per and requesting counsel, supported the inference that defendant's purpose was to delay the proceedings. Had the trial court appointed counsel the day before jury selection and granted a sixth continuance, it would have delayed the proceedings further and disrupted the trial, which had already been pending for 18 months. The procedural history and previous delays in the case support the conclusion that the trial court acted within its discretion in denying defendant's revocation motion, based on the totality of the circumstances.

12

## III

*Striking Defendant's Trial Testimony*

The trial court struck defendant's trial testimony because he refused to answer questions posed during cross-examination. Defendant contends that the trial court erred in striking his trial testimony because less drastic solutions were feasible. He argues that, the trial court should have (1) given instructions to the jury to consider defendant's answers in evaluating his credibility or (2) appointed counsel for defendant to advise him against his current course of action. The argument is without merit.

A.     *Relevant Procedure*

Defendant testified in his own defense at trial. During cross-examination, and in front of the jury, the colloquy was as follows:

"[PROSECUTOR]:  You were a father figure to [M.]?

"[DEFENDANT]:  Let me ask you:  Why are you - why are you trying to put words in my mouth or lead me?

"[PROSECUTOR]:  Objection.

"THE COURT:  Sir, if you [*sic*] you'll just listen to the questions and answer them, please.

"[DEFENDANT]:  I don't like that.  I mean, let's -- let's --

"THE COURT:  Sir.

"[DEFENDANT]:  -- let's be truthful about something.

"THE COURT:  Sir, you don't get to volunteer information.  You just answer her questions.

"[DEFENDANT]:  Well, I'm just saying she needs to be truthful.

"THE COURT:  You need to answer her questions and not make speeches to the jury.

"[DEFENDANT]:  Well, I'm just saying.

"THE COURT:  Continue, please.

13

"[PROSECUTOR]: Thank you.

"[DEFENDANT]: We can talk about Juror No. 11 hearing the officer debrief --

"THE COURT: Sir --

"[PROSECUTOR]: Objection.

"THE COURT: Sir, I'm only going to say this one more time: If you're going to insist on doing this, you're going to leave the witness stand.

"[DEFENDANT]: I mean, we just need to be truthful about stuff.

"THE COURT: All right. That's your warning.

"[DEFENDANT]: Okay. And tell the jury why I'm --

"[PROSECUTOR]: Objection.

"[DEFENDANT]: Tell the jury why I'm representing myself, then."

The court immediately called a recess and excused the jury. Outside the jury's presence, the following occurred:

"THE COURT: We're now outside the presence of the jury. [Defendant], I'm going to explain this to you one more time. Once you take the stand to testify, you are obligated to answer her questions. If you feel her questions are not truthful, you may say that. You can say that that isn't true when she asks you about some testimony that was given earlier. You can disagree with that testimony, but you don't get to make speeches. You don't get to make comments back to her on it. If you insist on continuing that I have a number of options. The very least of which you will probably not be happy with. This may include actually sitting in a different room, putting a camera in there and letting you answer her questions by way of closed circuit television.

"[DEFENDANT]: Okay. Let me ask you --

"THE COURT: No. We're going to go over this. If you continue to do that, then I can give instructions to the jury that your refusal to answer based on these questions and taken to the stand can be given whatever weight they deem it to be appropriate up to and

14

including complete disbelief to everything you testified to. We're going to do this the right way.

"[DEFENDANT]: Well, let me say something, Your Honor. There's a lot that, you know, in the motions that you filed about my information that was divulged to the Prosecution. Y'all done changed my transcripts.

"THE COURT: I'm sorry?

"[DEFENDANT]: Y'all done changed my transcripts.

"THE COURT: Changed your transcripts?

"[DEFENDANT]: Yeah, they've been altered. Evidence that I had on my cell phone, the district attorney --

"THE COURT: You think I altered your transcripts?

"[DEFENDANT]: Well, I just said -- I mean, you [*sic*] part of the judicial system.

"THE COURT: Right.

"[DEFENDANT]: So you guys are one. Okay. So let's say, y'all trying to give me three life sentences for this, and she's not being truthful about this --

"THE COURT: She's not testifying. You're the one testifying.

"[DEFENDANT]: Well, I mean, she falsified my evidence.

"THE COURT: Okay.

"[DEFENDANT]: Okay?

"THE COURT: Those are issues you're going to have to take up after this trial.

"[DEFENDANT]: These matters need to be revealed.

"THE COURT: Okay.

"[DEFENDANT]: Okay.

"THE COURT: You keep going the way you're going, you are not going to be pleased with the results.

"[DEFENDANT]: Well, I'm just going to tell the truth. That's what I --

"THE COURT: You are going to answer her questions?

15

"[DEFENDANT]:  Well, I'm going to tell the truth.

"THE COURT:  I'll assume that you're going to --

"[DEFENDANT]:  I'm going to tell the truth.

"THE COURT:  -- answer her questions.

"[DEFENDANT]:  I'm going to tell the truth to the evidence that I know is the truth and the prosecutor has not put on all of the --

"THE COURT:  She's not obligated to put on all the evidence.

"[DEFENDANT]:  Well, you tell me, it's okay to alter my phone?

"THE COURT:  I'm not telling you anybody is approved to alter evidence.

"[DEFENDANT]:  Well, that's what she does.  She never -- she never --

"THE COURT:  You may believe that.

"[DEFENDANT]:  She was told to give my phone over for a process to take place.

"THE COURT:  We're covering a territory that we've covered many times before.

"[DEFENDANT]:  I just totally disagree with all of this.

"THE COURT:  Are you going to answer her questions without volunteering your own story?

"[DEFENDANT]:  Well, Your Honor, to be honest --

"THE COURT:  Are you going to answer --

"[DEFENDANT]:  I disagree with the [whole] trial --

"THE COURT:  I know you do.

"[DEFENDANT]:  -- just for the simple fact that I didn't want to represent myself, but you guys forced me [to].

"THE COURT:  Sir, you went through three attorneys and declined a fourth.

"[DEFENDANT]:  Most definitely I went through three attorneys.  Why? Because I the third one came on and talked about the other two and --

"THE COURT:  We're going over the same territory again.

"[DEFENDANT]:  I mean, tell the truth.  Tell the truth.

16

After this exchange, the prosecutor continued cross-examining defendant in the presence of the jury. The following occurred:

"[PROSECUTOR]: [Defendant], did you see yourself as a father figure to [M.]?

"[DEFENDANT]: [Prosecutor], have you withheld evidence on my cell phone?

"[PROSECUTOR]: Objection.

"THE COURT: Okay. Ladies and gentlemen, we've been discussing outside your presence what's going to happen if [defendant] continues on this particular course of conduct refusing to answer questions. The jury may choose to give his testimony whatever weight you think it deserves to this point. I will ask [defendant] at this point on the record, are you now telling me that you will not answer the questions directly that are being placed or being put to you?

"[DEFENDANT]: Not when this trial is not fair.

"[THE COURT]: In that case, I will strike [defendant's] testimony. He does not get to first take the stand, tell his story and then refuse other questions without sanction. That sanction is his entire testimony is going to be stricken from the record. That means there will be no more evidence --

"[DEFENDANT]: With three life --

"THE COURT: -- unless the Plaintiff or the Prosecution wishes to present otherwise.

"[DEFENDANT]: I mean, you kept back my evidence, all my --

"THE COURT: So we're going to take another five-minute break. We're going to get a few things rearranged and then I'll see if [the prosecutor] has any further evidence she wishes to put on."

During the short recess and outside the presence of the jury, the trial court stated: "We are now together outside the presence of the jury. I have had the opportunity to do some reflection and some research. The record should reflect that there have been prior -- multiple prior admonitions to the defendant to refrain from spontaneous outbursts of

17

inadmissible matter. The defendant has now completed his direct testimony but is refusing to answer candidly answers on cross-examination and continues to make further inadmissible statements to the jury as well as making accusations outside the presence of the jury that -- of misconduct by the Prosecution and the Court.

"The defendant was offered the opportunity to comply with the Court's direction and answer the questions without volunteering information but has stated on the record that he will continue to, quote, tell the truth, unquote, to me or my perception that indicates that he intends to continue answering, or responding rather, in the same fashion as previous.

"I have considered possible avenues of dealing with the defendant's contumacious conduct. These include, one, revoking his right to self-representation per *Faretta*. This does not seem to me to be practical since the defendant, according to his statements, has already presented his entire case in chief. Forcing the defendant now to be represented by counsel at the stage of the proceedings would simply result in undue delay and, in my view, be futile.

"The second option I considered was allowing the defendant's testimony to stand instructing the jury to construe any ambiguities in his testimony against him and allowing his conduct to be used to determine his credibility. To me, after reflection, this seems inadequate since he has now placed before the jury his own self-serving, exculpatory testimony and to allow it to stand would seem to reward the misconduct to the jury if they choose to believe any part of that testimony.

"The third option which I considered, which to me seems to be the most appropriate seems to be the striking of the defendant's testimony as I indicated to the jury before we went on break. I would admonish the jurors to treat this testimony as if they never heard of it. This appears to me to be the least punitive of the alternatives and would preserve the core integrity of the trial process. It comports with the guidelines which are found in cases such as *People vs. Reynolds* found at 152 Cal.App.3d, Page 42,

18

a 1984 case in which the defendant at trial was accused of smuggling drugs into the jail. He refused to name these people on cross-examination after first taking the stand in his own behalf.  The trial judge granted the motion to strike the defendant's testimony.

"On appeal the Court affirmed the order and found no abuse of discretion because the defendant's Constitutional right to testify in his own behalf also entails submission to full cross-examination.  The defendant's failure to name the inmates who were threatening him might be understandable, but it was not protected from fair examination or cross-exam.  The outcome of the case was that the Court affirmed the order striking the defendant's testimony because by testifying in his own behalf he exposed himself to full cross examination and could not selectively refuse to answer questions put to him.

"We're going to call the jury back in.  I will instruct them that the defendant's entire testimony is to be stricken.  The record is going to reflect that I have considered the various options that are open to me with regard to remedies for the situation, and that is the one that I have chosen."

B.      *Analysis*

We review the trial court's decision to strike defendant's testimony for abuse of discretion, considering the full record made by the court.  (*People v. Reynolds* (1984) 152 Cal.App.3d 42, 47.)  "When a defendant refuses to answer questions on cross-examination . . . , the court is faced with a constitutional dilemma.  If the court strikes the defendant's testimony, its ruling implicates his ' "right to a fair opportunity to defend against the State's accusations," ' which is a component of due process.  [Citations.] 'Essential to a fair [hearing] is that the accused have the opportunity to exercise his fundamental, constitutional right to be heard in his own defense by testifying at [the hearing].  [Citations.]'  [Citation.]

"However, 'Defendant's constitutional right to testify in his own behalf must be considered in light of the principle that "[w]hen a defendant voluntarily testifies in his own defense the People may 'fully amplify his testimony by inquiring into the facts and

19

circumstances surrounding his assertions, or by introducing evidence through cross-examination which explains or refutes his statements or the inferences which may necessarily be drawn from them.' [Citation.]" ' [Citation.] 'Defendant's refusal to answer relevant questions [may deprive] the prosecution its right to subject [his] claim[s] to "the greatest legal engine ever invented for the discovery of truth," cross-examination. [Citation.]' [Citations.]

"In deciding whether to strike a defendant's . . . testimony based on his or her refusal to answer one or more questions, the trial court should examine ' "the *motive* of the witness and the *materiality* of the answer." [Citation]' [Citation] The court should also consider if less severe remedies are available before employing the 'drastic solution' of striking the witness's entire testimony. [Citation.] These include striking part of the testimony or allowing the trier of fact to consider the witness's failure to answer in evaluating his credibility. [Citations.]" (*People v. Seminoff* (2008) 159 Cal.App.4th 518, 525-526.)

Under these circumstances, the court did not abuse its discretion. Even after multiple warnings from the court, defendant continued to be nonresponsive. Rather than responding to the prosecutor's questions, defendant made the following inappropriate statements in front of the jury: (1) "We can talk about Juror No. 11 hearing the officer debrief"; (2) "Tell the jury why I'm representing myself, then"; (3) "[Prosecutor], have you withheld my evidence on my cell phone?"; and (3) "Not when this trial is not fair." Due to the seriousness of these assertions and defendant's refusal to be cross-examined, the trial court acted within its discretion in striking defendant's entire testimony.

DISPOSITION

The judgment is affirmed.


       NICHOLSON      , Acting P. J.


We concur:


       HULL          , J.


       DUARTE       , J.